RICHARD J. SMITH vs. STATE PAROLE BOARD & another.[1]

Middlesex.  September 13, 1983. — November 30, 1983.

Present: GRANT, KAPLAN, & DREBEN, JJ.

*Sex Offender.  Parole.  Imprisonment.  Due Process of Law*, Parole.

In the case of a parolee committed to a treatment center under G. L.
    c. 123A, § 5, as a sexually dangerous person, for a crime committed
    while on parole, the State Parole Board did not violate G. L. c. 127,
    § 149, in delaying execution of a parole revocation warrant until the
    parolee's release from the treatment center and in refusing to credit the
    period of the parolee's commitment against the unexpired portion of
    his original sentence. [147-151]
A parolee committed to a treatment center as a sexually dangerous per-
    son for a crime committed while on parole is not constitutionally en-
    titled to a prompt parole revocation hearing in the absence of par-
    ticular circumstances in which delay would raise a question of funda-
    mental fairness. [151-154]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 3, 1982.

The case was heard by *O'Neil*, J.

*Frank R. Herrmann* for the plaintiff.

*Linda G. Katz*, Assistant Attorney General, for the de-
fendants.

KAPLAN, J.  The facts are agreed, and were as follows.
The plaintiff, Richard J. Smith, was convicted of rape on
June 10, 1968, and sentenced to a term of imprisonment of
not less than seven nor more than twelve years at M.C.I.
Walpole.  After serving some five years, the plaintiff was
paroled on June 12, 1973.  For the reason that the plaintiff's
whereabouts became unknown, the Parole Board on August

---

[1] George A. Vose, as he is superintendent of M.C.I. Concord.

30, 1974, cancelled his permit to be at liberty and issued a warrant for his arrest.

On June 13, 1975, the plaintiff was indicted for the crime of assault with intent to commit rape, committed on December 23, 1974. On March 23, 1976, he pleaded guilty to the indictment. This would of course be a further basis for parole revocation. After a sixty-day commitment of the plaintiff for diagnosis at the Massachusetts Treatment Center (see G. L. c. 123A, § 4), the court on the basis of report and hearing determined that he was a sexually dangerous person (SDP) and committed him to the treatment center for one day to life (id.; § 5). The Parole Board was aware of this disposition but deferred executing its parole violation warrant. On April 26, 1982, after hearing, the plaintiff was ordered discharged from the center because no longer an SDP (id., § 9). Thereupon the warrant was served upon him, and at the date of the commencement of the present action, June 3, 1982, he was at M.C.I. Concord, awaiting a parole revocation hearing. It is understood that the hearing was held on June 10, 1982, and that the Parole Board revoked parole.

In this action commenced in the Superior Court, the plaintiff sought a declaration that the Parole Board acted illegally in postponing the execution of the warrant, i.e., in postponing consideration of whether parole should be revoked. Pressing statutory and constitutional grounds, the plaintiff argues that the warrant should have been executed, if at all, promptly following his indefinite commitment to the treatment center, and that it must now be declared that the period of the SDP commitment, some six years, counts against the remainder of the sentence for the rape and satisfies it.[2] (There is also a suggestion that after

---

[2] The plaintiff had just over six years of credit on his rape sentence — five years served and just over one year passed during parole before his permit was cancelled. See G. L. c. 127, § 149. So a maximum of under six years remained on the rape sentence. If the stay at the treatment center were counted on the rape sentence, that sentence would have been served when the plaintiff was released from the treatment center a little more than six years later.

the lapse of time the Parole Board should be held to have lost the power to execute the warrant.) The Parole Board denied any illegality. A declaratory judgment entered below in favor of the Parole Board, and we affirm.[3] We have to discuss § 149 of G. L. c. 127 (governing parole revocation warrants), and then the Constitution.

*Statute.* We set out in the margin the text of § 149, as appearing in St. 1980, c. 155, § 6, and invite particular attention to its last three sentences.[4] Section 149 deals with cases where a prisoner, out on parole, is sentenced to be imprisoned for a further crime. It is helpful to consider three situations that bear some possible resemblance to the case at hand. (i) Execution of a parole revocation warrant in respect to the earlier offense (whether the proposed revocation

---

[3] The judge rested decision primarily on an interpretation of G. L. c. 127, § 149, favorable to the Parole Board. As will appear, we reach decision on somewhat different, though not inconsistent, reasoning.

[4] "§ 149. If a permit to be at liberty has been revoked, the parole board may order the arrest of the holder of such permit by any officer qualified to serve civil or criminal process in any county, and the return of such holder to the prison or jail to which he was originally sentenced. A prisoner who has been so returned to prison or jail shall be detained therein according to the terms of his original sentence. In computing the period of his confinement, the time between the day of his release upon a permit and the day of revocation of such permit shall be considered as part of the term of his sentence, and the time between the day after the revocation of his permit until the service of the parole violation warrant shall not be considered as any part of the term of his original sentence. Service of the parole violation warrant shall be made effective forthwith upon the arrest and imprisonment of the parole violator unless he is charged upon arrest with additional crimes committed while on parole or revocation of parole, then service of said parole violation warrant shall not be effective until the expiration of any additional sentences by parole or otherwise. If the parole violator is found not guilty of the additional crimes charged, then service of the warrant on the parole violator shall be effective on the date of arrest, and the time served by him as a result of the violation shall be considered as part of the original sentence. If at the time of the order to return to prison or jail or of the revocation of his permit he is confined in any prison or jail, as a result of the conviction of another crime, service of such order shall not be made until his release therefrom, by parole or otherwise, and the time served by him upon any sentence under which he is so confined shall not be considered as any part of the term of his original sentence." (A 1980 amendment, St. 1980, c. 155, § 6, rephrased the first sentence and added "or jail" at two places as appears in the quoted text.)

is based on the commission of the second crime or on some other ground) must be deferred until the second sentence of imprisonment is served, and, if parole is then revoked, the time served on the second sentence is not to be counted as service on the first sentence; the remainder of the first sentence is due to be served. (ii) Suppose, during imprisonment on the second sentence, the person is determined to be an SDP and is committed to the treatment center, a commitment under G. L. c. 123A, § 6.[5] The period at the center counts against the second sentence.[6] If released from the center as being no longer an SDP before the expiration of the period of that sentence, the person is still obliged to complete the sentence according to law.[7] The revocation warrant is then executed, and if parole is revoked, service is required on the first sentence. (iii) Take the same case, but assume that the person's stay at the treatment center extends beyond the date of expiration of the second sentence. The second sentence is deemed served. By the terms of § 149 it appears that the parole revocation warrant is still executed at that expiration date. If parole is revoked, the time the person remains at the treatment center beyond that date apparently counts as service under the first sentence which becomes currently due.[8]

---

[5] The possible avenues leading to commitment to the treatment center are as follows. A person serving a criminal sentence for any crime may, after procedures initiated by certain officials, be found an SDP and committed to the center. G. L. c. 123A, § 6. Upon conviction of a person of any of a stated list of sexual offenses, and a finding after hearing that the person is an SDP, the court may make a direct commitment to the treatment center. *Id.,* § 5. The present case was such a case. Alternatively the court could impose a sentence of imprisonment, leaving it to the other authorities, if they chose, to act under § 6. See notes 11 and 18, *infra.*

[6] This is the apparent result in a c. 123A, § 6, case although c. 127, § 149, is not explicit. See *Commonwealth* v. *Rodriguez,* 376 Mass. 632, 639-640 (1978); *Andrews, petitioner,* 368 Mass. 468, 485-486 (1975). Compare other statutory provisions allowing credit on sentence for confinement elsewhere during that period for hospital treatment. G. L. c. 123, § 18; c. 127, § 117. Cf. *Stearns, petitioner,* 343 Mass. 53, 56 (1961).

[7] See cases cited, note 6, *supra.*

[8] This appears to follow from the general policy inferred from § 6 to allow the prisoner credit for time spent at the center on a sentence currently due.

The present case lies outside G. L. c. 127, § 149, and the cases just described because there was no sentence of imprisonment on the second offense; as permitted by G. L. c. 123A, § 5, the plaintiff was committed as an SDP following his guilty plea (see note 5). Argument is possible that the SDP process is "civil," and commitment of a person thereunder is not a "sentence," so that what § 149 has to say about deferring execution of the warrant is inapplicable. And a weak reference might be made to case (iii) above with respect to the indicated handling of an SDP commitment so far as it extends beyond the period of the second sentence of imprisonment. The Parole Board stresses the "criminal" aspect of the SDP process; and something might be made of cases (ii) and (iii) so far as the SDP commitment is treated in each instance as an equivalent of service under the second sentence of imprisonment.

The truth of the matter, as we see it, is that any characterizations of the SDP procedure in earlier decisions as quasi-civil or quasi-criminal were responsive to the particular contexts and are not really helpful in answering to the new context.[9] Word-chopping does not take us far.[10] Section 149

---

[9] The plaintiff points out that commitment as an SDP is designed to rehabilitate rather than punish, and cites cases that in various contexts do not equate c. 123A commitments with punitive criminal confinements. See e.g., *Commonwealth* v. *Ackers*, 343 Mass. 63, 68 (1961). The Parole Board says that conviction and liability to punishment are prerequisites to commitment under c. 123A, § 5, and that such commitments and traditional criminal sentences share the purpose of isolating the person from the public. Also cited is *Commonwealth* v. *Rodriguez*, 376 Mass. 632 (1978), where an SDP commitment under c. 123A, § 5, was treated as comparable to a criminal sentence. The question was whether juvenile delinquency adjudications could be introduced as evidence in a c. 123A, § 5, commitment hearing when a statute (G. L. c. 119, § 60, as amended through St. 1973, c. 1073, § 16) permitted use of these adjudications only in connection with "imposing sentence in any criminal proceeding." *Rodriguez* admitted the evidence, cautioning against "undue reliance on labels." 376 Mass. at 639.

[10] The term "sentence" appears in c. 127, § 149, while c. 123A, § 5, as appearing in St. 1958, c. 646, § 1, speaks of commitment "in lieu of sentence." This inspires argument by the plaintiff; but that $x$ is in lieu of $y$ may mean that the two are fungible equivalents, not necessarily that they are functionally different; the question is one of context.

does not cover the present case for the understandable reason that c. 123A, § 5, was not enacted until c. 127, § 149, had taken form, and the Legislature has not stepped in to revise § 149 to deal one way or other with the § 5 problem.[11] Thus the present situation is a casus omissus from § 149 — it does not tell us when a parole revocation warrant is to be executed in the case of a § 5 commitment — and the maxim about strict construction of penal statutes is not useful.[12] We can fairly say no more than this: We think, on a broadly analogical basis, that if the draftsmen of § 149 had before them the § 5 problem they probably would not have written the statute in such a way as to oblige the Parole

---

[11] Chapter 123A, § 5, achieved its present form in 1958 (St. 1958, c. 646, § 1), whereas c. 127, § 149, has remained substantially unchanged since 1946 (St. 1946, c. 424, § 1).

Until 1958, there was no provision for SDP commitment in lieu of a criminal sentence; a person convicted of a sexual offense had to be sentenced criminally even when the court upon an SDP finding made an immediate commitment to the treatment center. Also, before 1957 commitment to the center could not extend beyond the period of the criminal sentence. After legislative changes in 1957 and 1958, a court could omit imposing criminal sentence on a sexual offender; and all commitments to the center were without limit of time.

[12] According to § 149, the only occasion for execution of the probation revocation warrant at the time of arrest is when the violator is not "charged with additional crimes committed while on parole or revocation of parole"; and the relevant part of § 149 dealing with computation of prison time deals only with the case where the parole violator has been found "not guilty of the additional crimes charged." The present situation is not touched on. For other cases regarding the subject of length of incarceration, where the strict construction maxim was inapposite (prisoners did not prevail despite their colorable arguments that statutes should be read in their favor), see *Commonwealth* v. *Hughes*, 364 Mass. 426, 429-430 (1973); *Diafario* v. *Commissioner of Correction*, 371 Mass. 545, 550 (1976); *Pina* v. *Superintendent, Massachusetts Correctional Institution, Walpole*, 376 Mass. 659, 666-668 (1978); *Lynch, petitioner*, 379 Mass. 757, 760-761 (1980); *Durham* v. *Massachusetts Parole Board*, 382 Mass. 494, 498 (1981); *Gardiner* v. *Commissioner of Correction*, 5 Mass. App. Ct. 425, 427 (1977); *Commonwealth* v. *Carter*, 10 Mass. App. Ct. 618, 620-621 (1980); *Salley, petitioner*, 11 Mass. App. Ct. 40, 42-43 (1980).

Board to execute a parole revocation warrant at the outset of the commitment.

*Constitution.* Although the Parole Board did not violate any statutory duty, there remains the question whether it acted constitutionally. The Supreme Court held in *Morrissey* v. *Brewer*, 408 U.S. 471 (1972), that a paroled person by virtue of the due process clause was entitled to certain limited rights of notice, hearing, etc. in the conduct of a proceeding to revoke parole. Then in *Moody* v. *Daggett*, 429 U.S. 78 (1976), the Court faced the question whether "a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant is issued and lodged with the institution of his confinement but not served on him." *Id.* at 79. After detailed discussion, the Court answered that question in the negative (a 7-2 decision). "With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect." *Id.* at 87. [13]

*Moody* is correctly taken to announce a general rule that "there is no constitutional right to a prompt parole revocation hearing when the parolee is serving an independent intervening sentence in the same jurisdiction." *Hopper* v. *United States Parole Commn.*, 702 F.2d 842, 845 (9th Cir. 1983); cf. *Stefanik* v. *State Board of Parole*, 372 Mass. 726, 730 (1977). Upon a liberal reading of the *Moody* opinion, however, one can imagine situations in which an individual might come forward and establish affirmatively, on particular facts, a claim of constitutional deprivation resulting from postponement of consideration of the parole revocation. Interests that might be asserted by the individual could include protection against: Risk of loss of evidence

---

[13] A "preliminary hearing" upon arrest for a parole violation, as required by *Morrissey*, is not called for where the individual has been convicted on a subsequent offense and incarcerated. *Moody*, 429 U.S. at 86 n.7.

usable in defense against revocation. Cf. *Rhodes* v. *United States Parole Commn.*, 456 F. Supp. 17, 21 (D. Conn. 1977). Loss of rights to amenities in prison because of the outstanding warrant. Cf. *Reddin* v. *Israel*, 561 F.2d 715, 717-718 (7th Cir. 1977). Prejudice to chances of securing parole from the second sentence or entry into other rehabilitative programs. *Ibid.*; cf. *Sutherland* v. *McCall*, 709 F.2d 730, 733 (D.C. Cir. 1983); *Hopper*, 702 F.2d at 845.[14] In a more encompassing sense, anxiety about the putative results of the revocation hearing to be later held. Cf. *Sutherland*, 709 F.2d at 733; *Commonwealth* v. *McInerney*, 380 Mass. 59, 67-68 (1980).[15]

Of course, a hearing, if held early, might still result in a decision by the Parole Board to postpone final consideration of parole violation to the time of completion of the second sentence. In some cases, perhaps many, the State would have a definite interest in deferring the evaluation: given the predictive quality of the hearing, it may be thought best to hold it "at the time at which prediction is both most relevant and most accurate — at the expiration of the parolee's intervening sentence." *Moody*, 429 U.S. at 89.[16] If early hearing were accorded, and parole revoked, it would not necessarily follow (as the plaintiff seems to suggest) that service of the second sentence would operate also on the

[14] "Parole" is possible from an SDP commitment. See G. L. c. 123A, § 9.

[15] Commenting on claims of injury of these sorts in the *Moody* case, the Court said that they "either do not involve a loss of protected liberty or have not occurred by reason of the warrant and detainer." 429 U.S. at 87. As to loss of evidence, the parole authorities could offer a means of preservation. *Id.* at 88 n.9. There was no constitutional or statutory entitlement to specific prison conditions. *Ibid.* With respect to parole on the further offense, if this was assumed to be a protected liberty interest, it was significant that the same board that ruled on release on parole was charged with passing on the parole revocation. *Id.* at 88. (See note 20, *infra.*) Because the board retained discretion to decline to revoke parole, there was no loss of opportunity for what were in effect concurrent sentences. *Id.* at 87.

[16] In a case like the present, the parole violation is clear, and only the predictive element is left.

first, for the State may in some, perhaps many, cases assert its interest in maintaining a system of constraints in which violation of parole is treated as a distinct offense and is separately sanctioned through reinstating the relevant sentence. (This policy is explained in *Zerbst* v. *Kidwell,* 304 U.S. 359 [1938],[17] and in fact is manifested by G. L. c. 127, § 149.)

We think the general rule of the *Moody* case, as well as the interests to be weighed in deciding whether the rule may be deflected, should apply in substance to situations where individuals after second offense and conviction are held as SDP's rather than in ordinary imprisonment, with the terminus of such commitment perhaps less certain than that of some or most sentences of imprisonment. Surely it is not the case (as the plaintiff suggests) that the finding that a person is no longer sexually dangerous means that he or she is entitled to return to society, then and there, without a possibility of further accounting.[18]

To revert to the circumstances of the instant case: The plaintiff presents a bare record and does not escape the general rule. At the present stage he advances a claim of right without the affirmative showing on particular facts predicated above.[19] It is not to be overlooked that he long with-

---

[17] Justice Black said: "Unless a parole violator can be required to serve some time in prison in addition to that imposed for an offense committed while on parole, he not only escapes punishment for the unexpired portion of his original sentence, but the disciplinary power of the Board will be practically nullified." *Zerbst,* 304 U.S. at 363.

[18] See *Thibodeau* v. *Commonwealth,* 428 F. Supp. 542, 545 (D. Mass. 1977) (General Laws c. 123A has remedial purposes but "[t]hat does not imply . . . that traditional sentencing concerns and alternatives have been preempted"), related case, *Thibodeau* v. *Commonwealth,* 366 Mass. 452 (1974). The case was an instance of a court imposing an ordinary criminal sentence on a sexual offender although anticipating prompt remission to the treatment center by the prison authorities. Cf. *Commonwealth* v. *Gomes,* 355 Mass. 479 (1969), on habeas corpus, *Gomes* v. *Gaughan,* 471 F.2d 794, 796 (1st Cir. 1973).

[19] We do not discount the possibility that where the SDP commitment under G. L. c. 123A, § 5, has been very lengthy, reinstatement of the original sentence upon revocation of parole may raise a question of funda-

held suit (and, as far as appears of record, any complaint to the parole authorities) to a time when he might assert with some plausibility that he had notionally served the original sentence. Cf. *Commonwealth* v. *McInerney*, 380 Mass. 59, 66-67 (1980). (The prisoner in *Moody* requested execution of the warrant promptly upon the filing of the detainer, 429 U.S. at 80, 81.) The plaintiff may have had prudential reasons for not raising a claim early on and offering to face a revocation hearing then. Anxiety might have attached to the possibility of an early rather than a postponed hearing. For aught that appears the State was justified in waiting until the expiration of the SDP commitment to consider finally any claim of the plaintiff to be relieved of the parole violation;[20] and there is no suggestion that the hearing actually provided was procedurally defective, or that the conclusion reached was undeserved.

Finally we observe, first, that we do not mean to preclude the plaintiff from instituting a new action upon a more

---

mental fairness. When the question occurs, it would be instructive to compare the actual length of the SDP commitment with the length of a sentence of imprisonment that might have been expected on the second offense. Such an approach under the existing statutes would tend to equate the position of one committed as an SDP under § 5, with one sentenced and then committed during sentence under § 6. (See situations [ii] and [iii] above.) In the case at bar, punishment for the later offense could have been imprisonment in State prison for life or any term of years or fine of $1,000 and jail for up to two and one-half years. G. L. c. 265, § 24, prior to amendment by St. 1980, c. 459, § 7. As this was a second serious offense, a sentence of six years — equal to the plaintiff's time at the treatment center — would not have been beyond fair expectation.

[20] In fact, the same Parole Board charged with handling parole revocation has the individual under continual review. The person is afforded an annual judicial hearing on request to determine whether he has ceased to be sexually dangerous. G. L. c. 123A, § 9. At such a hearing, the Parole Board is one of two agencies which present recommendations for disposition. *Ibid.* Through an independent process, the board also decides whether the individual should be granted "parole" from the SDP commitment (see note 14, *supra*). The board deals also with any question of reparole from a reinstated original sentence, if available.

We add that the board, if it saw fit from its knowledge of the plaintiff, might have unilaterally withdrawn the parole revocation warrant at any time.

complete record, if he should so elect. In that event we state that he should be free of any defense of former adjudication on the part of the Parole Board or other public adversary. See Restatement (Second) of Judgments § 26(1)(b) (1980). Second, we suggest that amendment of G. L. c. 127, § 149, is desirable to cover definitively the now omitted situation of a second offense eventuating in an SDP commitment. We think it not improper to say that, in any reordering of § 149, it would be well to study the current Federal statute and regulations (18 U.S.C. §§ 4213-4214 [1982]; 28 C.F.R. §§ 2.47-2.52 [1982]) dealing with parole violations in cases of conviction of a further offense, together with Justice Stevens' dissenting opinion in *Moody* (429 U.S. at 89) on the same subject.[21]

*Judgment affirmed.*

---

[21] Like the majority in *Moody*, we do not put the suggestions of the dissenting opinion on a constitutional plane.