STEPHEN S. CROOKER vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, NORFOLK.[1]

Norfolk.  October 10, 1984. — February 7, 1985.

Present: GRANT, DREBEN, & KASS, JJ.

*Imprisonment. Habeas Corpus. Parole.*

The Massachusetts Parole Board was not a necessary party to an action chal-
lenging the refusal of prison officials to recommend a prisoner for early
parole consideration, where a decision in the case would terminate the
controversy as defined by the complaint and would not restrict the parole
board's discretion with respect to the prisoner. [316-317]
Where a parole board regulation provided that any prisoner committed to
Massachusetts Correctional Institution, Concord, who had had previous
adult incarceration would be required to serve an additional six months
beyond the time at which he would otherwise be eligible for parole, the
six-month requirement was to be applied separately to a certain prisoner's
initial Concord sentence and to his two Concord sentences imposed
subsequently, which were to be served concurrently with each other but
"from and after" the first sentence, with the effect of delaying his parole
eligibility for one year. [317-319]
There was no merit to the contention of a prisoner that the superintendent of
a correctional institution and the institutional classification committee
improperly refused to recommend him for early parole consideration.
[319-320]

PETITION filed in the Superior Court Department on May
1, 1984.
The case was heard by *Herbert Abrams*, J.
*Stephen S. Crooker*, pro se.
*Martin E. Levin*, Assistant Attorney General, for the defend-
ant.

---

[1] The court heard argument October 10, 1984, and after argument re-
quested a brief amicus curiae, in letter form, from the parole board. That
brief was received November 28, 1984.

*Brian K. Bowen*, for Massachusetts Parole Board, amicus curiae, submitted a brief.

KASS, J. At the time he filed his petition for a writ of habeas corpus, Stephen S. Crooker was serving three five-year sentences at M.C.I., Norfolk. One sentence (the "A sentence") was for burning a motor vehicle with intent to defraud an insurer (G. L. c. 266, § 10). The other two (the "B sentences") were for conspiracy to assist in the forgery of identification papers for a driver's license (Crooker used the name of a person who had died in infancy between 1930 and 1935) and assisting another falsely to procure a driver's license. See G. L. c. 90, § 24B. Each sentence was for five years at M.C.I., Concord, the B sentences to run concurrently with each other, but from and after the A sentence. Crooker received an administrative transfer from M.C.I., Concord, to M.C.I., Norfolk. The subject of Crooker's petition is his date of eligibility for parole. He claims an eligibility date of August 17, 1984; the correctional authorities have said the date is February 17, 1985. The difference turns on whether a postponement of parole eligibility based on prior incarceration applies to both the A sentence and the B sentences, or to just one or the other.

1. *Procedural issues.* On May 1, 1984, when Crooker brought his petition for habeas corpus, he had, on his most optimistic calculation, three and a half months of his sentences left to serve. The respondent moved to dismiss on the ground that habeas corpus lies only when the person restrained claims entitlement to immediate release. *Beaton, petitioner*, 354 Mass. 670, 671-672 (1968). *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 664-665 (1978). *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham*, 386 Mass. 848, 850-852 (1982). When, however, a controversy exists as to the rights of the parties, a judge in a case such as this may construe a petition for habeas corpus as a claim for declaratory relief. *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 666. *Hennessy* v. *Superintendent, Mass. Correctional Inst., Framingham, supra* at 852. *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 386-388 (1983).

If construed as a complaint for declaratory judgment under G. L. c. 231A, the respondent argues, the petition should have been dismissed for failure to serve the parole board as a necessary party. While the views of the parole board are of interest (see note 1, *supra*), Crooker's quarrel is with the refusal of the superintendent of M.C.I., Norfolk, and the institutional classification committee to recommend Crooker for early parole consideration or to present him to the parole board as eligible for parole. A declaration in this case will terminate the controversy as defined by the complaint, see G. L. c. 231A, § 3, and will not dictate to the parole board how it ought to exercise its discretion with respect to Crooker. Compare *Woods* v. *State Bd. of Parole*, 351 Mass. 556, 559 (1967), with *Henschel* v. *Commissioner of Correction*, 368 Mass. 130 (1975). The parole board, therefore, is not a necessary party.[2]

2. *Parole eligibility date.* Here is how Crooker calculates his parole eligibility date: the effective date of the A sentence (five years at M.C.I., Concord) was February 17, 1983. On February 23, 1983, he received the two B sentences, each for five years, to be served concurrently with each other, but from and after service of the A sentence. Section 212.01 of "Decision-Making Guidelines and Procedures for Parole Granting, Parole Revocation and Pardons" (rev. 1981) (hereinafter the Guidelines), published by the parole board[3] and Advisory Board of Pardons, sets forth a table of eligibility for parole from Concord and Framingham commitments.[4] A factor in

---

[2] Moreover, the respondent did not appeal from the failure of the Superior Court judge to act on the motion to dismiss, thus precluding review of the procedural issues which he raised. *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725 (1979).

[3] General Laws c. 27, § 5(*e*) & (*f*), as appearing in St. 1960, c. 765, § 2, require the parole board to make and print rules "relative to the performance of its duties."

[4] The text of § 212.01 and the accompanying table are as follows:

"212.01 Reformatory Sentences

The Board fashions parole eligibility for Concord and Framingham reformatory commitments on a combination of length of the indefinite sentence and the existence of a prior adult incarceration of

parole eligibility is whether the prisoner has been incarcerated before; if so, the minimum time to be served in prison is enlarged by six months. So, in the case of a sentence over five years and less than thirteen years, parole eligibility would, without a prior commitment, come up after one year, but would be enlarged by a prior commitment to eighteen months. Crooker reasons that the A sentence (five years) and the B sentences (each five years but concurrent with each other) add up to a ten-year sentence and, therefore, he was eligible for parole on August 17, 1984, i.e., eighteen months after the commencement of the A sentence. The prison authorities take the A sentence and the B sentences separately. If the A sentence and the B sentences collectively are each enlarged on account of prior incarceration, each requires one year of service before parole eligibility and, thus, Crooker must serve a minimum of two years from February 17, 1983.

The prison authorities' method of calculation found favor with the Superior Court judge, and it does with us. The table in § 212.01 sets up eligibility dates for a sentence, i.e., in the singular, and makes no provision for adding together the terms of separate sentences to apply the prior incarceration enlarge-

thirty days or more. The parole eligibility ranges from six months to twenty four months at six month increments. Eligibility is computed as follows:

### Length of Indefinite Sentence

| Prior Adult Incarcerations | 0 up to 6 years | 6 years to 12 years | 12 years up to 18 years | 18 years and above |
|---|---|---|---|---|
| No previous criminal commitments other than juvenile or military. | 6 months or half-time, whichever is less | 1 year | 18 months | 2 years |
| One or more previous criminal commitments other than juvenile or military." | 1 year [or] half-time, whichever [is less] | 18 months | 2 years | 2 years |

ment. One of the consequences of imposing a sentence "from and after" would seem to be that the "from and after" sentence stands independent for purposes of parole eligibility calculations. See in this regard G. L. c. 127, § 133(*b*), which treats a "from and after" sentence as a separate basis for minimum time to be served. There is an affidavit in the record from the assistant date computation specialist for the Department of Correction which treats the A sentence and the B sentences separately for purposes of calculating Crooker's parole eligibility date. We give that determination some weight. *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976). As to the authority of the parole board to establish its guidelines, see G. L. c. 27, § 5(*e*). See also *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 132 & n.5, 133-134 & n.6, 135 (1975); *Commonwealth* v. *Hayes*, 372 Mass. 505, 509 (1977). The calculus prescribed in *Henschel, supra* at 132-135, involved aggregating sentences in somewhat different circumstances, but the reasoning of *Henschel* supports the result we have arrived at.

3. *Early parole consideration.* Crooker complains that the institutional classification committee and the superintendent improperly refused to recommend him for early parole consideration. Under § 222.02(a)(1) of the Guidelines, a prisoner may seek early parole consideration by submitting a written request to the parole board. That subparagraph of the Guidelines provides: "There is no necessity for prior approval by the institution or Department of Correction." Thus, while the lack of institutional support for early parole may have been a disappointment to Crooker, it was not procedurally necessary to getting him before the body that had the ultimate power of decision. As a practical matter, of course, the lack of a recommendation from the institutional classification committee and the superintendent was likely to be influential with the parole board.

Even if their action in this case were subject to judicial review, there was nothing unfair about the refusal of the institutional authorities to recommend Crooker for early parole consideration. Crooker's record contained sufficient of the negative

criteria listed in § 222.02(b)(2) of the Guidelines so that the superintendent and the institutional classification committee, in their discretion, could decline to recommend early parole for Crooker.[5]

4. *Validity of conviction under G. L. c. 90, § 24B.* Assuming, without deciding, that Crooker's challenge to the validity of his conviction under G. L. c. 90, § 24B, is properly before us, it is sufficient to call his attention to the second paragraph of that section, which Crooker apparently neglected to read. That paragraph, as appearing in St. 1975, c. 156, § 2, describes, among others, the crime of procuring or assisting another "to falsely impersonate the person named" in an application for a driver's license. Crooker's amendment to his petition for a writ of habeas corpus cheerfully admits facts which make out a case under the second paragraph of § 24B.[6]

*Judgment affirmed.*
*Denial of motion to reconsider*
*affirmed.*

---

[5] Section 222.02(b)(2) provides that "[t]he presence of one or more of the following 'negative' factors would weigh against early consideration." Two of seven factors listed apply to Crooker: "present case or prior history demonstrating . . . offenses of an assaultive nature" and "lengthy criminal history, with prior incarcerations."

[6] What Crooker pleads in his amended petition is, in part, as follows: "The petitioner [i.e., Crooker] convinced city clerk employees, through a ruse, to allow him to scan through the death certificates of infants from 1930 to 1935. Once the petitioner had the deceased infant's pertinent information (i.e., date of birth, parents' names, etc.), he could then apply for a birth certificate which he obtained through another ruse. The deceased infant's name the petitioner chose was Salvatore Trimboli.

"With the appropriate certificate, Nelson [who needed the license] then applied for a driver's license at the Registry of Motor Vehicles in Springfield. He obtained an appointment to take the test for the [p]ermit, which he obtained after passing the test and showing the Trimboli birth certificate."