RALPH C. HAMM, THIRD, *vs.* COMMISSIONER OF CORRECTION & others.[1] No. 90-P-374. January 9, 1991. *Imprisonment*, Parole. *Habeas Corpus. Parole. Practice, Criminal*, Sentence. *Constitutional Law*, Ex post facto law, Equal protection of laws.

In 1969, the plaintiff received two concurrent indeterminate life sentences and four consecutive "from and after" determinate sentences, all to be served in State prison.[2] By a petition for habeas corpus[3], he chal-

---

[1]The Massachusetts Parole Board and the superintendent of M.C.I., Norfolk.

[2]The plaintiff is serving the following sentences which were imposed on June 27, 1969, by the Superior Court and amended in October, 1971, by the Appellate Division of the Superior Court: (a) two concurrent life sentences for armed robbery and assault with intent to rape; (b) fifteen to twenty years for armed robbery, to be served "from and after" (a); (c) two and one-half to five years for mayhem, to be served "from and after" (b); (d) two and one-half to five years for mayhem, to be served "from and after" (c); and (e) six to ten years for assault with intent to murder, to be served "from and after" (d). He is also serving a "year and a day" sentence for assault on a correctional officer after incarceration on the above charges; this sentence is to run "from and after" (d) and will not affect the timing of his eligibility for parole inasmuch as it will run concurrently with (e) which is also "from and after" (d) and is six to ten years.

[3]Habeas corpus is appropriate relief to pursue "when the person restrained claims entitlement to immediate release." *Crooker* v, *Superintendent, Mass. Correctional*

lenged the parole board's policy of refusing to hold a parole hearing until after he has served the combined total of the minimum sentences for the life sentences and each of the determinate "from and after" sentences, a total of more than thirty-one years. A judge of the Superior Court dismissed the petition, ruling that the plaintiff was not eligible for parole until the year 2000. We discuss the plaintiff's appellate arguments seriatim.

*Aggregation.* The plaintiff's primary challenge is to the parole board's policy of "aggregating" the minimum sentences of his "from and after" sentences and then adding that total to the first fifteen years served on the life sentences in order to calculate a parole hearing date. He argues that he has the right to have a parole hearing date after serving the first fifteen years on the life sentences, and then, if and when paroled from those sentences, to begin to serve each of the "from and after" sentences sequentially. If the plaintiff is granted a parole hearing and then paroled from his life sentences, he will begin serving his "from and after" sentences, and a release date will be determined solely on the "from and after" sentences, and "good time" credits to be applied thereto. The plaintiff would, therefore, know, from the time of the granting of parole on the life sentences, the earliest and the latest dates on which he could be eligible for actual release, and would also know the outer limit of his sentences, that is, the maximum time he may have to serve.[4] This earliest release date, of course, would be subject to his good behavior, and misbehavior could result in his being surrendered for violation of the terms of parole on the original life sentences. If, however, the plaintiff remains subject to the single parole eligibility date currently in effect, he cannot be certain of his earliest release date because there can be no certainty of release until the actual granting of parole (which would not be until the year 2000 at the earliest).[5]

---

*Inst., Norfolk,* 19 Mass. App. Ct. 315, 316 (1985). The plaintiff does not, and cannot, seek complete release; rather, he seeks release from his life sentences to serve his "from and after" sentences. "When, however, a controversy exists as to the rights of the parties, a judge . . . may construe a petition for habeas corpus as a claim for declaratory relief." *Id.* at 316. As there is an actual controversy between the plaintiff and the prison authorities, the court may properly treat his petition as a claim for declaratory relief.

[4] Although "good time" credits are not "certain" (they can be forfeited), they are within the control of the prisoner as they operate in direct relation to the inmate's behavior and conduct.

[5] The Commonwealth concedes that, although November 28, 2001, is the plaintiff's earliest parole eligibility date, by applying 445 days of "good time" credits, it calculates the plaintiff's earliest date to be November 30, 2000. The plaintiff calculates a greater number of "good time" credits earned, 1,244 days.

The plaintiff has also argued that by not holding the parole hearing until after he has served the minimum sentences for both the life sentences and the minimum sentences for each of the from and after sentences, he is prevented from applying for early release or "special" release. The parole board represents that the plaintiff is currently able to request special consideration for early release and does not need to wait until he has been paroled from the life sentences, as there is no regulation or

The case law, however, upholds a process of aggregation of the sentences to determine a date for a parole eligibility hearing. The Supreme Judicial Court held in 1975 that for the purpose of determining the parole eligibility date of a prisoner serving consecutive sentences, it is appropriate to aggregate the minimum term of the initial sentence with that of each consecutive sentence. *Henschel* v. *Commissioner of Correction*, 368 Mass. 130 (1975).

*The parole board's change of policy.* The parties agree that, prior to 1988, the parole board practice regarding prisoners serving consecutive State prison sentences was to determine a single parole eligibility date "by aggregating the parole ineligibility periods attendant to each consecutive sentence." See Parole Eligibility Policies Annotated § 203.6 (1988). The Commonwealth, applying this policy to the plaintiff in 1982, determined a single parole eligibility date of November 28, 2001 (not including "good time" deductions).

At the time the plaintiff began serving his sentences, G. L. c. 127, § 133A, as appearing in St. 1965, c. 766, § 1, provided that a prisoner serving a life sentence "shall be eligible for parole, and the parole board shall, within sixty days before the expiration of fifteen years of such sentence, conduct a public hearing before the full membership." If this statutory policy had been applied to the plaintiff's sentences, he would have been eligible for parole from the two concurrent life sentences on November 28, 1983. The plaintiff, however, was not granted a parole hearing in 1983, nor, despite his requests, thereafter. In 1988, the parole board changed its policy so that, as it recites, "all sentences, consecutive to the life sentence[s], remain separate for parole purposes from the life sentence, and that if parole were granted from the life sentence, such parole would only be to the consecutive sentence[s]." This 1988 policy change has not been applied to the plaintiff because, the parole board recites, it decided not to apply the new policy as "to any offender whose fifteen year parole eligibility had passed by more than one year and who had other sentences that were being served . . . consecutively to the life sentence." Contrary to the plaintiff's contention, the parole board was free to adopt a policy regarding its rules and procedures that was to be implemented purely on a prospective basis. See *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 393-394 (1985).

---

rule that prevents such a request. This representation may be illusory. Assuming, arguendo, that the plaintiff were to succeed in obtaining such a hearing, he would still be seeking the same sort of parole as he asks for in this appeal, viz., one from his life sentences to his "from and after" sentences. With the current unitary system applying to him, however, he would likely be unable to be paroled from his life sentences, as that would result in exactly what he has been denied by the Commonwealth: the separate treatment of his life sentences and consecutive sentences. Considering the Commonwealth's vigorous refusal to treat his sentences in this manner, it is, at best, unlikely that he would receive this treatment as a result of a "special release" parole hearing.

*Constitutional considerations.* The plaintiff next contends that the refusal of the parole board to apply the 1988 policy to his sentences violates his constitutional right not to be subject to a law ex post facto, as provided in art. 1, § 9, of the United States Constitution and art. 24 of the Declaration of Rights of the Massachusetts Constitution. Parole eligibility is a proper subject for application of the ex post facto doctrine. *Lerner* v. *Gill*, 751 F.2d 450, 454 (1st Cir. 1985). For a law to be unconstitutionally ex post facto, it must "apply to events occurring before its enactment[] and it must disadvantage the offender affected by it." *Weaver* v. *Graham*, 450 U.S. 24, 29 (1981). The plaintiff's situation does not present an ex post facto issue. The rules have not been changed adversely to him. Rather, the reverse has occurred: after his offenses and sentencing, a rule has changed in a manner that, if applied to him, would work to his advantage — or so the plaintiff seems to think. Indeed, there is a benefit to aggregation, which is that earned good time is deducted from the total number of years to be served on all of the "from and after" sentences rather than from each "from and after" sentence sequentially. In other words, earned good time is applied to each of the "from and after" sentences collectively through aggregation. This would not be the case if the plaintiff had been paroled from the life sentences and then had to serve the "from and after" sentences in sequence. In the latter scenario, earned good time would be applied to only the specific sentence that was being served at the time it was earned, rather than to all of the "from and after" sentences combined.

We consider the plaintiff's argument as based on denial of equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. We look to see whether the plaintiff is disadvantaged by application of the pre-1988 policy. Although the plaintiff would not have the certainty that he would like, there is a substantial benefit to aggregation. Thus, because earned "good time" credits will be applied to all the "from and after" sentences, the plaintiff will have an earlier parole eligibility date with aggregation than without it. In sum, the plaintiff has shown no constitutionally cognizable disadvantage.

*Judgment affirmed.*

*Ralph C. Hamm, III*, pro se.

*M. Yvonne Gonzalez*, Special Assistant Attorney General, for the defendants.