JOHN N. ZULLO, petitioner.

No. 93-P-1428.

Worcester. June 7, 1994. - September 30, 1994.

Present: BROWN, KASS, & GREENBERG, JJ.

Further appellate review granted, 419 Mass. 1105 (1995).

*Parole. Imprisonment*, Parole. *Practice, Criminal*, Parole. *Due Process of Law*, Parole.

In the case of a parolee who had violated the conditions of his parole by leaving Massachusetts without permission in 1979 but whose whereabouts were readily ascertainable since 1980 when he was sentenced in Oregon for a crime committed there, from which he was paroled in 1983 and discharged from parole in 1988, the failure of the parole board to extradite the parolee reasonably promptly after the expiration of his Oregon sentence constituted a waiver of jurisdiction over him, especially where Massachusetts authorities showed no interest in his return, either by agreement with Oregon, by detainer, or any other available affirmative action following his release until a parole revocation warrant was finally issued in 1992. [373-376]

PETITION filed in the Superior Court Department on March 4, 1993.

The case was heard by *Herbert F. Travers, Jr.*, J.

*John N. Zullo*, pro se.

*William J. Meade*, Assistant Attorney General, for the respondent.

GREENBERG, J. This is an appeal by the petitioner, John N. Zullo, from the denial of habeas corpus relief. The case was heard in the Superior Court on the basis of undisputed documentary evidence upon the respondent's motion for summary judgment. Everything that was presented to the trial judge, therefore, is in the record before us, and we may arrive at our own conclusions of law. See *Mahony* v. *Assessors of Watertown*, 362 Mass. 210, 211 (1972); *Richardson* v. *Lee Realty Corp.*, 364 Mass. 632, 634 (1974); *Foxborough*

v. *Bay State Harness Horse Racing & Breeding Assn.*, 5 Mass. App. Ct. 613, 615 (1977).

The facts are as follows. After pleading guilty to armed robbery in Massachusetts on May 6, 1975, the petitioner was sentenced to ten years imprisonment at M.C.I., Concord. On August 13, 1976, he was released on parole with the usual condition that he report any change of residence to his parole officer. On January 22, 1979, after serving slightly less than three years on parole, he left Massachusetts without permission. That triggered a parole revocation warrant which issued on January 31, 1979.[1] The warrant turned up on a record check in March, 1979, when police in Beaverton, Oregon, began investigating the petitioner's role in a burglary there. By April 8, 1980, suspicion escalated to a formal charge and, at that stage, Oregon officials notified the Massachusetts parole board that the petitioner was being held in Oregon. The board, evidently suffering budget difficulties, informed the Oregon authorities on April 18, 1980, that it "had no money to extradite [the] subject." Eleven days later, the petitioner was indicted by a Washington County grand jury in Oregon.

Instead of remaining in Oregon, the petitioner fled and on December 14, 1980, was apprehended in Denver, Colorado, on an Oregon fugitive-from-justice warrant. While awaiting rendition to Oregon, the petitioner learned from Denver police that Massachusetts again declined to serve the parole violation warrant upon him. The petitioner signed a waiver of extradition proceedings, returned to Oregon and pleaded guilty to the charge. He began serving time in the Oregon penitentiary, from which he was paroled on February 11, 1983. Massachusetts did not lodge a detainer for the petitioner while he was imprisoned at the Oregon penitentiary.[2]

---

[1] Two causes for revocation of the petitioner's parole permit are listed on the parole violation report: (1) not conducting himself as a responsible citizen; and (2) not reporting his change of address to his parole officer.

[2] See Massachusetts Parole Board, Parole Eligibility Policies 125 (January, 1988): "If the parolee is otherwise in custody pursuant to new criminal charges, the warrant will lodge as a detainer. Upon the release of the parolee from actual custody to the warrant or the termination of an intervening sentence that might have resulted from the new criminal charge,

See *Kleczka* v. *Commonwealth*, 350 Mass. 74, 76 (1966). Upon his release, the petitioner remained at large until discharged from his Oregon parole on February 26, 1988. By 1991, the petitioner, together with his common law wife and two children had moved to San Antonio, Texas. While openly residing there, the petitioner was arrested in 1992 on misdemeanor charges. A routine record check turned up information concerning the outstanding Massachusetts warrant. Again the petitioner waived rendition proceedings. At last, the warrant was served, and he was transferred to Massachusetts where, nearly sixteen years after his release on parole, he began serving the balance of his original ten-year Concord sentence.

In the present petition for habeas corpus, the petitioner alleges that he is entitled to his release because the board's twelve-year delay in executing the parole revocation warrant violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution. We may pretermit the question whether the board's refusal to credit him with the number of days he was available to serve the balance of his Massachusetts sentence transgressed G. L. c. 127, § 149, for the petitioner waived this claim during oral argument.

We agree with the board's position that when informed on April 8, 1980, that the petitioner was under arrest for burglary in Oregon, it might choose not to serve the revocation warrant. See *Smith* v. *State Parole Bd.*, 17 Mass. App. Ct. 145, 150 n.12 (1983). At that time, the board merely declined to exercise its authority pursuant to G. L. c. 127, § 149. We suppose that until the petitioner's Oregon confinement and release to parole ended, Massachusetts need not have executed its warrant. Under § 149, the service of the warrant would not be effective until the expiration of the Oregon sentence. However, once the petitioner was discharged from his Oregon parole — in 1988 — no action was taken by the board until four years had passed. As in the *Smith* case,

---

the parole violation warrant will be served, thus allowing the pre-parole sentence(s) to begin again."

*supra* at 150, "the present situation is a casus omissus from § 149" — it does not tell us when a parole revocation warrant is to be executed in a case where the violator is at large and his whereabouts are readily ascertainable.

Nothing in the record indicates that after the petitioner absconded from Massachusetts, thus triggering the issuance of a warrant for permanent custody, that the board treated the matter as a "whereabouts unknown case." Far from being a fugitive, his at large status resulted from the inaction of governmental authorities. *United States* v. *Merritt*, 478 F. Supp. 804, 807 (D.C. 1979). During the four years after he was available for service of the warrant, the petitioner made no attempt to conceal his identity or location. "It is wholly unreasonable to ascribe fault to this [petitioner] because he did not badger . . . the authorities to execute the detainer against him." *Ibid.*

Although the parole board may not have violated any statutory duty, there remains the question whether its actions were constitutionally proper. In analogous situations, it is well settled that when a prisoner is released prior to service or expiration of his sentence through no fault of his own, and the authorities make no attempt over a prolonged period of time to reacquire custody over him, he may be given credit for the time involved, and he will not be required at some later time to serve the remainder of his sentence. *White* v. *Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930). *Albori* v. *United States*, 67 F.2d 4, 7 (9th Cir. 1933). *Bailey* v. *Ciccone*, 420 F. Supp. 344, 347 (W.D. Mo. 1976). These decisions proceed, in part, on due process grounds under the principle that it is fundamentally unfair to require a prisoner to serve his sentence in installments.

Similarly, in *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427 (1978), the court held that "fairness is the appropriate measure in determining whether and to what extent" an outstanding Massachusetts sentence could be served concurrently by an escapee who is later convicted and sentenced for a crime committed in another State. Although different courts have used various rationales for their conclu-

sions, the results do not differ in practice. In the instant case, the petitioner submits that the board's unreasonable delay prejudiced his ability to a fair revocation hearing. The petitioner also argues that because the board declined to extradite him in 1980 and 1983, records concerning his availability were lost. Last, he correctly points out that the board's decision not to proceed with rendition deprived him of the opportunity to complete the Concord sentence at an earlier time.

There is merit to the petitioner's position. Other courts in substantially similar circumstances have adhered to a variety of due process or "fairness" theories to invalidate parole warrants where prejudice to the parolee has been shown. See *In re Colin*, 337 Mich. 491 (1953); *People v. Zelker*, 42 A.D.2d 998 (N.Y. 1973). The "due process clause of the Fourteenth Amendment . . . requires that 'action by a state through any of its agencies must be consistent with the fundamental principles of liberty and justice.' " *Piper* v. *Estelle*, 485 F.2d 245, 246 (5th Cir. 1973), quoting from *Shields* v. *Beto*, 370 F.2d 1003, 1004 (5th Cir. 1967). "[T]he issuance of a violator warrant triggers a process which, as a matter of fundamental fairness must be pursued with reasonable diligence and with reasonable dispatch." *Shelton* v. *United States Bd. of Parole*, 388 F.2d 567, 574 (D.C. Cir. 1967). Of significant import to the due process analysis is whether the violator has been prejudiced by the delay of the parole board and the extent, if any, to which the violator contributed to the delay. See *United States* v. *Gernie*, 228 F. Supp. 329, 338 (S.D.N.Y. 1964).

Thus, we hold that the failure of the board to extradite the petitioner reasonably promptly after the expiration of his Oregon sentence constituted a waiver of jurisdiction over the petitioner, especially where Massachusetts showed no interest in his return, either by agreement with Oregon, by detainer, or any other available affirmative action following his release. Compare *Piper* v. *Estelle*, *supra* at 246. We recognize that the lapse of four years or any specific period of time may not be determinative in every case, but rather each case should

rest upon its own peculiar facts and circumstances. Our position derives from due process concerns and focuses on the prejudice that resulted to the petitioner which may not be excused on account of fiscal constraints. The board's unwillingness to execute its warrant in these circumstances fairly implies a waiver of jurisdiction. See *Shields* v. *Beto*, 370 F.2d at 1005-1006.

> *Judgment reversed.*
> *An order shall enter in the*
>   *Superior Court releasing*
>   *the petitioner from custody.*