RICHARD BARRIERE vs. SHEILA HUBBARD.[1]

No. 97-P-335.

Suffolk. June 12, 1998. – June 9, 1999.

Present: KASS, DREBEN, & BECK, JJ.

*Parole. Practice, Criminal,* Parole, Sentence. *Statute,* Construction. *Administrative Law,* Regulations, Judicial review.

The Parole Board acted within its authority in determining an inmate's parole eligibility date pursuant to 120 Code Mass. Regs. § 203.08(1) (1993), as then in effect, by adding the five-year mandatory minimum sentence on a sentence of from twelve to fifteen years for a conviction under G. L. c. 94C, § 32E(*b*)(2), to one-third of the minimum sentence of from nine to thirteen years, to be served from and after the first sentence, for a conviction under G. L. c. 94C, § 40; and the board was not required to aggregate the sentences pursuant to G. L. c. 127, § 133, where that section made no provision for mandatory minimum sentences. [82-85]

CIVIL ACTION commenced in the Superior Court Department on July 21, 1995.

Motions for summary judgment and to dismiss were heard by *Julian T. Houston,* J.

*Susanne G. Levsen,* Assistant Attorney General, for the defendant.

*Barry Barkow* for the plaintiff.

BECK, J. The plaintiff-prisoner, Richard Barriere, and the defendant chair of the Parole Board (Parole Board or board) disagree about the calculation of Barriere's parole eligibility date. The dispute concerns the treatment of consecutive sentences for non-violent crimes when the so-called "A sentence" includes a mandatory minimum sentence which is greater than one-third of the prisoner's minimum sentence. A

---

[1]Chair of the Massachusetts Parole Board, "sued in both her individual and her official capacities." Although the Parole Board itself is not a named party, we consider that the claim is essentially one against the board.

Superior Court judge allowed Barriere's motion for summary judgment; the Parole Board appeals.

*The statutory framework.* The Parole Board, established within the Department of Correction, but not subject to its jurisdiction, G. L. c. 27, § 4, is responsible, inter alia, for (a) "determin[ing] which prisoners . . . may be released on parole, and when and under what conditions," and (b) supervising those prisoners released on parole. G. L. c. 27, § 5. Sections 128-149A of G. L. c. 127 set out the rules governing "parole permits," which may be granted at the discretion of the Parole Board "if the parole board is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." G. L. c. 127, § 130. See *Commonwealth* v. *Hogan*, 17 Mass. App. Ct. 186, 192 (1983).

Section 133 of G. L. c. 127, as in effect at the time in question and as last amended in 1965 insofar as relevant here, before passage of the Truth-in-Sentencing Act, St. 1993, c. 432, set out the rules governing the calculation of parole eligibility for indeterminate State prison sentences, including aggregation rules for consecutive sentences. "Clause (a) of § 133 establishe[d] the period of parole ineligibility for certain enumerated violent felonies [two-thirds of the minimum sentence]; clause (b) amount[ed] to a residual provision applicable to all State prison sentences imposed for conviction for any crime other than those mentioned in clause (a) [one-third of the minimum sentence]. Clause (c) [made] special parole provisions for cases involving sentences imposed for crimes committed by persons while at liberty on parole [two-thirds of the minimum sentence]." *Durham* v. *Massachusetts Parole Bd.*, 382 Mass. 494, 497 (1981). Each clause also provides that if there is more than one such sentence to be served, parole eligibility is to be determined by aggregating the minimum terms of the relevant sentences and then applying the appropriate fraction to that sum. G. L. c. 127, § 133. Each also has a minimum term independent of the prescribed calculation. *Ibid.*

General Laws c. 279, § 8A, provides that "from and after" sentences take effect when "[the] prisoner serving [the] previous sentence shall have been released therefrom by parole or otherwise." This statute was enacted in its present form in 1924.

In 1980, the Legislature added mandatory minimum terms to the controlled substances trafficking statutes, G. L. c. 94C, §§ 32E and 32H. (The lengths of the mandatory terms have subsequently been increased, but the concept is the same.) There was no corresponding change in G. L. c. 127, § 133(*b*), concerning aggregation.

The board has authority under G. L. c. 27, § 5(*e*), to "make rules relative to the performance of its duties," which include determining the timing of release on parole and the conditions under which prisoners may be released. In 1990, the Parole Board promulgated 120 Code Mass. Regs. § 203.08 to govern "consecutive state prison sentences." Subsection (1) provides that "[w]here a state prison sentence is ordered served consecutive to another sentence, a single parole eligibility is determined by aggregating the parole ineligibility periods attendant to each consecutive sentence."[2]

*Factual background.* The undisputed facts are as follows. On December 7, 1993, seven months before the effective date of the Truth-in-Sentencing Act, St. 1993, c. 432, Richard Barriere was convicted of trafficking in more than twenty-eight and less than one hundred grams of cocaine in violation of G. L. c. 94C, § 32E(*b*)(2), and of conspiracy to traffic in cocaine, G. L. c. 94C, § 40. The judge sentenced Barriere to a term of from twelve to fifteen years on the trafficking charge (the A sentence). By statute that sentence includes a mandatory minimum sentence of five years. G. L. c. 94C, §§ 32E(*b*)(2), 32H. The sentence for the conspiracy charge was from nine to fifteen years from and after the trafficking charge (the B sentence). See G. L. c. 279, § 8A. In determining Barriere's parole eligibility date, the Parole Board, pursuant to 120 Code Mass. Regs. § 203.08(1) (1993), started with the mandatory minimum sentence for the trafficking charge and then added one-third of the minimum conspiracy sentence pursuant to G. L. c. 127, § 133(*b*), yielding eight years as the period during which Barriere was ineligible for parole. The defendant claims that both sentences should have been aggregated pursuant to § 133(*b*), yielding a parole eligibility date of seven years (one-third of the sum of the minimum sentences for each offense: twelve plus nine equals twenty-one divided by three equals seven). Barriere brought the dispute to Superior Court seeking declaratory and

---

[2]As of March, 1997, 120 Code Mass. Regs. § 203.08 is no longer in effect.

injunctive relief in the form of an order to the Parole Board to calculate his parole eligibility date according to his view.

A Superior Court judge determined that the Parole Board's regulation is inconsistent with the plain language of § 133. Purporting to follow the logic of *Devlin* v. *Commissioner of Correction*, 364 Mass. 435 (1973), a case involving an administrative change in policy disallowing furloughs to first degree murderers, *id.* at 438-439, the Superior Court judge ruled that sentences containing mandatory minimums were to be aggregated according to the plain language of § 133, "[a]bsent a clear legislative intent to except mandatory sentences from method of calculating parole eligibility [*sic*]." The judge added that "[a]t best, the formula set forth in § 133 is ambiguous, in which case it must be construed strictly against the Commonwealth," citing *Wood* v. *Commissioner of Correction*, 363 Mass. 79, 81 (1973). We disagree.

*Discussion.* The judge appears to have been persuaded by Barriere's argument: § 133 is clear; it provides one method for aggregation of indeterminate sentences for non-violent crimes not committed while on parole; therefore that formula must be used. Barriere claims there is "no basis in the governing statutes" for the Parole Board's regulation using ineligibility periods to calculate parole eligibility. Alternatively, he argues that any ambiguity in the statute, if such there be, must be resolved in his favor.

The Parole Board also thinks that the terms of § 133 are clear, but comes to a different conclusion. The Parole Board argues that § 133 simply does not make provision for the treatment of minimum mandatory sentences; that the board has authority under G. L. c. 27, § 5(*e*), to "make rules relative to the performance of its duties," including determining the timing of release on parole and the conditions under which prisoners may be released; and that 120 Code Mass. Regs. § 203.08(1) is consistent with legislative intent.

We look first to the words of the statutes which must be reconciled. See *Commonwealth* v. *Hogan*, 17 Mass. App. Ct. at 189. General Laws c. 94C, §§ 32E(*b*)(2) and 32H, set out minimum mandatory terms, some of which are quite substantial, and G. L. c. 127, § 133, does not explicitly provide rules for aggregating sentences with minimum mandatory terms. This gap is a "casus omissus" from § 133 — it does not tell us how to calculate parole eligibility in these circumstances. See *Smith*

v. *State Parole Bd.*, 17 Mass. App. Ct. 145, 150 (1983). ("Casus omissus" is defined as "a case omitted; an event or contingency for which no provision is made; particularly a case not provided for by the statute on the general subject, and which is therefore left to be governed by the common law." Black's Law Dictionary 219 [6th ed. 1990]). That the statute is silent on this point does not require that we follow "the maxim about strict construction of penal statutes." *Id.* at 150 & n.12. "[T]he maxim 'is a guide for resolving ambiguity, rather than a rigid requirement that we interpret each statute in the manner most favorable to [prisoners].' " *Commonwealth* v. *Tata*, 28 Mass. App. Ct. 23, 26 (1989) (citations omitted).

The Parole Board has authority under its enabling statute, G. L. c. 27, § 5, to promulgate regulations to govern these cases. The question is whether the board's resolution of the issue is consistent with legislative mandate. See *Thomas* v. *Commissioner of the Div. of Med. Assistance*, 425 Mass. 738, 746 (1997). Our standard in reviewing the Parole Board's regulations is one of due deference to the expertise of the board. See *Crooker* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 19 Mass. App. Ct. 315, 319 (1985) (and cases cited). See also *Thomas* v. *Commissioner of the Div. of Med. Assistance, supra.*

There is precedent for treatment of sentences not explicitly included in § 133 in circumstances similar to those in this case. In *Henschel* v. *Commissioner of Correction*, 368 Mass. 130 (1975), the issue concerned the treatment of a house of correction from and after sentence. As here, there was no provision in § 133 for aggregating a definite house of correction sentence with an indeterminate State prison sentence. *Id.* at 134. The court found the explanation for this omission in the fact that the Legislature had recently expanded the board's jurisdiction to include prisoners sentenced to house of correction terms, but had not amended § 133 to account for the expanded jurisdiction. "But from the fact that § 133 only describes aggregation of minimum terms of consecutive indeterminate sentences for computing the earliest date of parole permissible, it does not follow that the board cannot consider different types of consecutive sentences together to make one determination of parole eligibility. Even within § 133 the board may have to consider two consecutive sentences where one is for a violent crime and one is for a nonviolent crime by computing two-thirds of the minimum of the first sentence and adding to it one-third of the

minimum of the second to arrive at the total minimum time which must be served before parole." *Id.* at 135. "[I]n computing parole eligibility[,] the category of offense, the nature of the sentence and the type of institution will determine the minimum time which must be served." *Id.* at 133. See *Smith* v. *State Parole Bd.*, 17 Mass. App. Ct. at 150 (Legislature's failure to revise G. L. c. 127, § 149, concerning computation of period of confinement after issuance of parole violation warrant, upon passage of sexually dangerous person legislation, does not preclude application of § 149 to reflect probable legislative intent). See also *Crooker* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 19 Mass. App. Ct. at 319 ("One of the consequences of imposing a sentence 'from and after' would seem to be that the 'from and after' sentence stands independent for purposes of parole eligibility calculations").

Nowhere in his argument does Barriere consider the legislative intent of G. L. c. 94C, §§ 32E(*b*)(2) and 32H. Because he focuses his entire argument on the need to aggregate the sentences under § 133, he loses sight of the legislative intent to impose mandatory minimum sentences for trafficking, see *Commonwealth* v. *Silva*, 21 Mass. App. Ct. 536, 543-545 (1986), and the sentencing judge's authority and intent to impose consecutive sentences. See G. L. c. 279, § 8A. He argues that so long as he serves at least five years, he has satisfied the requirements of the mandatory sentences for trafficking, even if in effect he is serving the fifth year of the mandatory trafficking sentence concurrent with the first year of the from and after sentence for conspiracy. We conclude that the Legislature did not intend to create a volume discount for prisoners in such circumstances. Compare *Durham* v. *Massachusetts Parole Bd.*, 382 Mass. at 499-500 (rejecting the prisoner's argument that he should be able to aggregate his preparole sentence with the sentence for a crime committed later while on parole).

In promulgating the regulation at issue here, the Parole Board reasonably carried out its responsibilities under G. L. c. 27, § 5, and G. L. c. 127, § 133. The regulation is also in harmony with the more recently enacted mandatory trafficking sentences in G. L. c. 94C, §§ 32E and 32H. Compare *Doe* v. *Attorney Gen.*, 425 Mass. 210, 215 (1997) ("When a new provision conflicts with a prior statute, the new provision, as the last expression of the Legislature, controls"). Especially given the explicitly discretionary nature of its statutory authority, the Parole Board's regulation is a valid exercise of its authority.

The judgment is reversed. A new judgment is to enter allowing the defendant's motion to dismiss.

*So ordered.*