DAVID M. HENSCHEL *vs.* COMMISSIONER OF CORRECTION
& others.[1]

Norfolk.    February 6, 1975. — June 12, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* Sentence.    *Parole.*

Where a prisoner on December 11, 1968, was sentenced for armed
robbery to three to ten years in the State prison [the A sentence],
on January 16, 1970, was sentenced for another armed robbery to
six to fifteen years in the State prison [the B sentence], to take
effect "from and after the expiration of any sentence the . . .
[plaintiff] may now be serving," and on January 19, 1970, while
serving the A sentence, was sentenced to a house of correction [the
C sentence], "for the term of two years, said sentence to take effect
from and after the completion of the sentence or sentences the . . .
[plaintiff] is now serving in the" State prison, it was held that the
C sentence was imposed to run from and after the A sentence,
not from and after both the A and B sentences [132-133]; the cor-
rect method to compute the date of the prisoner's parole eligibility
on all the sentences under G. L. c. 127, § 133, cl. (a), was first to
examine the A and B sentences together, secondly to examine the
A and C sentences together, and finally to adopt the later of the
two dates arrived at [133-135]; G. L. c. 279, § 8A, did not require
a different result [135-136].

BILL IN EQUITY filed in the Superior Court on May 30,
1974.

The suit was heard by *Brogna, J.*

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Michael D. Cutler* for the plaintiff.

*Barbara A. H. Smith,* Assistant Attorney General, for
the defendants.

[1] The Superintendent of the Massachusetts Correctional Institution,
Walpole, and the Massachusetts Parole Board.

REARDON, J.   The plaintiff sought a declaration to resolve a dispute concerning the date on which he is eligible for parole from a series of sentences imposed on him.   On December 11, 1968, the plaintiff was given a sentence of three to ten years in the Massachusetts Correctional Institution, Walpole (the A sentence), in the Superior Court for Worcester County in addition to other equal or shorter concurrent sentences which are of no moment in resolving the issue of this case.   On January 16, 1970, in the same court, he received five concurrent sentences to the same institution of six to fifteen years each (the B sentence) to take effect "from and after the expiration of any sentence the . . . [plaintiff] may now be serving."   Three days later in the Superior Court for Franklin County the plaintiff was sentenced to the house of correction for Worcester County (the C sentence), "for the term of two years, said sentence to take effect from and after the completion of the sentence or sentences the . . . [plaintiff] is now serving in the . . . [Massachusetts Correctional Institution] Walpole."[2]   It was agreed by the parties that at the time the C sentence was imposed the plaintiff was serving the A sentence.

The plaintiff brought this appeal from the final decree of the trial judge.   In order to expedite the disposition of the plaintiff's case, the full court entered an order on March 11, 1975, without an accompanying opinion, to the effect that the parole eligibility date as to all the above imposed sentences be established as September 15, 1974.   In this opinion we elaborate the reasons underlying that order.

---

[2] Other sentences were imposed in the Superior Court for Franklin County on September 29, 1970, consisting of a term of five to eight years and two shorter concurrent sentences, all to be served concurrently with the sentences the plaintiff was then serving.   It is agreed by the parties for the purposes of this appeal that this group of sentences does not affect the plaintiff's parole eligibility or discharge date inasmuch as the sentences run concurrently with preexisting, longer State prison sentences.

The dispute revolves around the method by which the Parole Board (board) computed the plaintiff's parole eligibility date. In reliance on G. L. c. 127, § 133, cl. (a), the board first aggregated the A and B sentences, adding the minimum terms of the two consecutive sentences and taking two-thirds of that period as the minimum time to be served.[3] Computed this way, a parole eligibility date of September 15, 1974, was established,[4] and the plaintiff was actually paroled from the A and B sentences on October 4, 1974. The C sentence was not aggregated but was construed as a detainer to the aggregated A and B sentences, taking effect on October 4, 1974. Under this approach the plaintiff would not be eligible for parole from the C sentence until October 4, 1975, when he would have served one-half of the two-year term.[5] This procedure was upheld by the trial judge. The plaintiff claims that the C sentence, like the B sentence, was imposed to run from and after the A sentence and, hence, concurrent with the B sentence, and that since the C sentence was of lesser duration than the B sentence the date of parole eligibility on all sentences should be unaffected by the C sentence.

In the first place it is clear that the C sentence was imposed to run from and after the A sentence and not from and after service by the plaintiff of both the A and B sentences. The judge's language was "from and after the completion of the sentence or sentences the . . .

---

[3] The A and B sentences were for armed robbery (G. L. c. 265, § 17) so that parole eligibility is determined pursuant to cl. (a) of G. L. c. 127, § 133.

[4] It was agreed by the parties that this date does not reflect subtraction of any possible credits for donation of blood under G. L. c. 127, § 129A, or for participation in a rehabilitative program under G. L. c. 127, § 129D.

[5] Massachusetts Parole Board and Advisory Board of Pardons, Structure, Rules and Statutes (1972) at 5.

[plaintiff] is now serving." The finding of the trial judge that the plaintiff was serving only the A sentence at that time is not disputed by the parties in this case. The effect of a from and after sentence phrased in those terms is to make the sentence consecutive only with respect to the sentence then being served, not with respect to other sentences which have been imposed previously but which are not then being served. *Baranow* v. *Commissioner of Correction*, 1 Mass. App. Ct. 831, 832 (1973). Massachusetts Department of Correction, Commissioner's Bulletin 60-3 (July 25, 1960). If a judge has the intention that the sentences he is imposing should be in addition to the aggregate of all previous sentences he should sentence "from and after the expiration of all previous sentences which the defendant has been ordered to serve." *Ibid.*

The next question is what effect to give the B and C sentences, both of which run from and after the original A sentence. In *Baranow* v. *Commissioner of Correction, supra*, the Appeals Court held that two sentences, both of which took effect from and after a third sentence, were to be served concurrently, with the computation of parole eligibility determined accordingly. The defendants distinguish the *Baranow* case, pointing out that the sentences there were of the same nature and to the same correctional institution whereas in the instant case the A sentence is for an indeterminate term to the State prison and the C sentence is for a definite term to the house of correction. There is substance to this distinction, for in computing parole eligibility the category of offense, the nature of the sentence and the type of institution will determine the minimum time which must be served. For example, even where the sentence is for an indeterminate term to the State prison, eligibility for parole may be two-thirds of the minimum term if the conviction is for a violent or sex crime but only one-third of the minimum term in the case of other offenses. G. L. c. 127, § 133, clauses (a) and (b). In addition, by regulations of the board, a prisoner sentenced to a house

of correction is generally not eligible for parole until he has served one-half of his term.[6]   Consequently, even if two sentences are to run concurrently they must be considered separately in the computation for parole eligibility.   It cannot be said that shorter sentences are for all purposes "absorbed" into the longer sentences.   Cf. *Carlino* v. *Commissioner of Correction*, 355 Mass. 159, 161 (1969).

However, we are not in agreement with the method by which the board in this instance determined the plaintiff's eligibility for parole.   It properly computed his eligibility under the A and B sentences by aggregating the two minimum terms pursuant to G. L. c. 127, § 133, cl. (a).   But it then determined that the C sentence would not take effect until after he was paroled on the aggregated A-B sentences.   This procedure incorrectly treated the C sentence as if it were from and after both the A and B sentences rather than just the A sentence. See *Baranow* v. *Commissioner of Correction, supra.* Instead, the board should have considered the A and C sentences apart from the intervening B sentence, determining the parole eligibility date as if the B sentence did not exist.   The correct date of eligibility would then be the later of the two dates arrived at by considering the A-B sentences and the A-C sentences.   See Rep. A. G., Pub. Doc. No. 12 (1953) 28-29.

The defendants object that although G. L. c. 127, § 133, gives the board authority to aggregate the A and B sentences, which are both indeterminate terms to the State prison, it does not provide for aggregating the A sentence with the C sentence, a definite term to the house of correction.   The failure of the statute to allude to the latter situation is explained by the legislative history. The reference in § 133 to the determination of eligibility by the board by aggregating consecutive minimum terms

[6] No objection is made to the board's authority to adopt regulations governing parole eligibility where no limits are provided by statute.

dates back to St. 1897, c. 294. From that time until 1960 the board had jurisdiction only over prisoners in the State correctional institutions. Recent amendments to G. L. c. 127, § 128, have since expanded the board's jurisdiction to include certain county house of correction prisoners. St. 1960, c. 765, § 3. St. 1970, c. 298. In expanding that jurisdiction, however, the Legislature did not rewrite § 133, which prescribes limits on parole eligibility for prisoners held under sentences of a minimum term, generally those being served in the State prison. Compare G. L. c. 279, § 24, with G. L. c. 279, § 31. The result of all this is that when a defendant is sentenced to a house of correction for a definite term there are no statutory limits on parole eligibility although, as mentioned above, there are board regulations governing the matter. But from the fact that § 133 only describes aggregation of minimum terms of consecutive indeterminate sentences for computing the earliest date of parole permissible, it does not follow that the board cannot consider different types of consecutive sentences together to make one determination of parole eligibility. Even within § 133 the board may have to consider two consecutive sentences where one is for a violent crime and one is for a nonviolent crime by computing two-thirds of the minimum of the first sentence and adding to it one-third of the minimum of the second to arrive at the total minimum time which must be served before parole. Rep. A. G., Pub. Doc. No. 12 (1967) 148.

A similar procedure should be employed in this case, for the board can compute minimum time for parole eligibility under the A sentence as prescribed by § 133, and add to that the minimum time under its regulations for the C sentence. The question becomes simply when is the earliest date on which it can be said the prisoner has served sufficient time for parole under this particular configuration of consecutive sentences.

We do not agree with the defendants' argument that G. L. c. 279, § 8A, requires a different result. That

statute provides in part that "[f]or the purpose only of determining the time of the taking effect of a sentence which is ordered to take effect from and after the expiration of a previous sentence, such previous sentence shall be deemed to have expired when a prisoner serving such previous sentence shall have been released therefrom by parole or otherwise." Relying on this provision, the board concluded that the C sentence could not begin to run until October 4, 1974, when the board actually released the plaintiff from the A sentence, as well as from the B sentence, as a result of the board's having aggregated the two under G. L. c. 127, § 133. However, it is evident from the legislative history that § 8A was aimed only at ensuring that a prisoner would not be freed from custody for the remainder of the term of one sentence only to be reincarcerated at the end of the term in order to serve a second sentence imposed "from and after the expiration" of the first. *Brown* v. *Commissioner of Correction*, 336 Mass. 718, 723-724 (1958). The effect of the enactment was thus to permit the second sentence to take effect as early as the parole eligibility date of the first sentence which facilitates rather than precludes the considering of consecutive sentences together in order to arrive at one date of parole eligibility. To follow the defendants' approach would require the board to make a series of decisions granting parole from one sentence to the next rather than a single decision on the basis of one parole eligibility date for all sentences. The former procedure makes little sense since the decision to grant parole is to be based on whether the board believes the prisoner can live freely outside of prison without violating the law. G. L. c. 127, § 130. *Baxter* v. *Commonwealth*, 359 Mass. 175, 179 (1971). It would also make little sense to require actual release on parole from the first sentence where the second sentence is to the house of correction while making a single decision on the aggregate of sentences in the instances where they are all to the State prison and, hence, governed by G. L. c. 127,

§ 133.[7]   To do so would treat a prisoner sentenced to two years in a house of correction more harshly than had he been sentenced to two to three years in the State prison, even though the latter sentence is considered to be more serious.   Cf. G. L. c. 127, § 97, which permits transfers of prisoners between correctional institutions and county houses of correction but prohibits transfers from a house of correction to the State prison at Walpole.

In sum, had the board followed the procedure outlined here it would have calculated the plaintiff's parole eligibility, first, by examining the A and B sentences together, as it did, and, second, by examining the A and C sentences together, finally adopting the later of the two dates arrived at in this manner as the correct date for eligibility.   Since the minimum time of the B sentence was six years, and since G. L. c. 127, § 133, cl. (a), requires that two-thirds of that term be served prior to parole, it is evident that the A and B sentences considered together would result in a later eligibility date than the A and C sentences together for, as discussed above, the plaintiff would be eligible for parole on C sentence after serving only one year of that sentence.   It follows that September 15, 1974, the date on which the plaintiff was ruled eligible for parole on the aggregated A and B sentences, was the correct parole eligibility date on all his sentences.

---

[7] It appears that where there are consecutive sentences to a house of correction, the board also determines parole eligibility based on the aggregate of the sentences.   Massachusetts Parole Board and Advisory Board of Pardons, Structure, Rules and Statutes (1972) at 5.