WARREN DURHAM *vs.* MASSACHUSETTS PAROLE BOARD.

Suffolk. September 12, 1980. — February 10, 1981.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Parole. Imprisonment.*

For the purpose of determining parole eligibility as to a sentence for a
crime committed while on parole, G. L. c. 127, § 133, clause (c), does
not permit such a sentence to be aggregated with a prisoner's pre-
parole sentence. [496-501]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 12, 1979.

The case was heard on a motion for summary judgment
by *Mullaney*, J., a District Court judge sitting under statu-
tory authority.

The Supreme Judicial Court granted a request for direct
appellate review.

*Marilyn L. Hotch*, Assistant Attorney General (*Stanley
E. Adelman*, Special Assistant Attorney General, with her)
for the defendant.

*John P. Osler* for the plaintiff.

QUIRICO, J. The defendant Massachusetts Parole Board
appeals from the decision of a Superior Court judge declar-
ing that the plaintiff Warren Durham, a prisoner at the
Massachusetts Correctional Institution at Walpole is pres-
ently eligible for parole consideration. We granted direct
appellate review to resolve a question as to the proper inter-
pretation of the third clause of G. L. c. 127, § 133, which
establishes a minimum period of ineligibility for parole re-
lease after conviction of and sentencing to State prison for a
crime committed while on parole. We now reverse the
judgment below and remand to the Superior Court for entry
of a substitute judgment.

The facts essential to our disposition of this appeal are not disputed. On September 19, 1969, upon his conviction on two counts of an indictment charging assault and battery by means of a dangerous weapon, Durham was sentenced to be confined at M.C.I., Walpole, for a period of not less than three nor more than ten years. This sentence took effect July 14, 1969;[1] on December 18, 1970, Durham was released on parole.[2] On July 6, 1972, Durham's parole was revoked and a parole violation warrant was issued for his arrest. He was returned to custody under this warrant on March 6, 1975. On October 2, 1975, Durham received an additional sentence of six to ten years at M.C.I., Walpole, again for a conviction on an indictment charging assault and battery by means of a dangerous weapon. This sentence was imposed to take effect from and after the expiration of the sentence he was then serving.

In accord with its stated policy, see Commissioner's Bulletin No. 77-11 — Parole Board Policy Statement (June 6, 1977), the parole board in 1976 and 1977 reviewed Durham's eligibility for parole from his 1969 sentence but did not grant him a parole. On May 6, 1978, Durham completed serving that sentence and began serving his 1975 sentence. According to the parole board, Durham will not become eligible for parole consideration until May 5, 1982,

---

[1] Durham was deemed to have already served sixty-seven days of this sentence at the time it was imposed. See G. L. c. 279, § 33A.

[2] At oral argument, we were informed by the assistant attorney general representing the parole board that Durham was paroled under the following provision of G. L. c. 127, § 133 (a), as amended through St. 1966, c. 261, which at the time read: "that upon the written recommendation of the superintendent or the director of the prison camp, and the commissioner of correction, and, with the unanimous consent and approval of the full parole board, such a prisoner shall become eligible for parole consideration, and, with like consent and approval, may be given a parole permit before [he shall have served two-thirds of his minimum sentence] but in any event not [until he shall have served one-third of his minimum sentence, but not less than one year]." We note that by St. 1971, c. 464, this provision of G. L. c. 127, § 133, has been amended to require the consent and approval of a majority of the board, rather than a unanimous decision.

the date on which he will have served two-thirds of the minimum term of his 1975 sentence.[3]

Durham, however, contends that he became eligible for parole consideration after having served a period equal to two-thirds of the aggregate minimum terms of the two sentences. Under his theory, the date of his parole eligibility as to both sentences was September 30, 1979.[4] Accordingly, on December 12, 1979, Durham through his attorney filed an action seeking a declaration of his eligibility for parole consideration and an order requiring the parole board to provide a parole release hearing. There being no dispute as to any material fact, the case was heard by a special master on the parties' cross motions for summary judgment. The master recommended granting the plaintiff's motion, and on April 2, 1980, the Superior Court judge entered a judgment declaring as follows: "G. L. c. 127, sec. 133, clause (c) does not preclude the aggregation of pre-parole and post-parole sentences such as are here involved. Plaintiff is entitled as a matter of law to such aggregation of sentences and the Board is to grant plaintiff a hearing as required by G. L. c. 127, sec. 136 [specifying procedure for parole release hearings]."[5]

The sole issue presented on this appeal is whether G. L. c. 127, § 133, permits such aggregation. Section 133 begins by stating that "[p]arole permits may be granted by the

---

[3] For the purposes of this discussion, we assume the accuracy of the calculations pertaining to parole eligibility presented to us by the parties.

[4] Durham's calculation appears to be based on service of a total of six years of actual incarceration. He ignores the statutory provision for crediting time between release on parole and revocation of parole against the sentence from which a prisoner was paroled. See G. L. c. 127, § 149, and discussion *infra* at 497-498.

[5] The parole board moved for a stay of the judgment and order pending appeal. The stay was granted, with the provision "that the parole board shall grant the plaintiff immediate hearing and without prejudice to the plaintiff's right for a rehearing subsequent to the hearing by the court." On June 16, 1980, the full parole board, having held such a hearing, voted to deny parole, but expressed an intention to reconsider Durham's case following disposition of this appeal.

parole board to prisoners subject to its jurisdiction at such time as the board in each case may determine," then limits the board's discretion by providing minimum periods of parole ineligibility depending on the type of crime for which a prisoner has been sentenced. Clause (*a*) of § 133 establishes the period of parole ineligibility for certain enumerated violent felonies; clause (*b*) amounts to a residual provision applicable to all State prison sentences imposed for conviction of any crime other than those mentioned in clause (*a*). Clause (*c*) makes special parole provisions for cases involving sentences imposed for crimes committed by persons while at liberty on parole. It provides "that no prisoner held under a sentence containing a minimum sentence for a crime committed while on parole shall receive a parole permit until he shall have served two-thirds of such minimum sentence, or, if he has two or more sentences to be served otherwise than concurrently for offenses committed while on parole, two-thirds of the aggregate of the minimum terms of such several sentences, but in any event not less than two years for each such sentence." G. L. c. 127, § 133 (*c*), as appearing in St. 1979, c. 266. Finally, § 133 provides for certain deductions from the periods of ineligibility for parole otherwise established by that section.

Durham concedes that the period of parole ineligibility on his 1975 sentence is determined by clause (*c*) of § 133, but argues that the language of that clause represents a simple "omission of a provision for aggregation" of pre-parole and parole crime sentences. The end product of his theory, accepted by the judge, is that time served by a prisoner on a pre-parole sentence over and above the minimum period of parole ineligibility based on that sentence would be available to offset the period of parole ineligibility arising from his subsequent parole crime sentence. This "credit" would apparently include both the period of actual incarceration prior to parole as well as the time between a prisoner's release on parole and the revocation of parole. See G. L. c. 127, § 149, as appearing in St. 1980, c. 155, § 6 ("In computing the period of [a prisoner's] confinement, the

time between the day of his release upon a permit and the day of revocation of such permit shall be considered as part of the term of his sentence . . .").  See also *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 667-668 (1978).

We do not agree with this interpretation of the restrictions on parole eligibility imposed by clause *(c)*.  In our view, such a procedure would conflict directly with the language of clause *(c)* as well as the purposes of that clause as revealed by its legislative history.  First, it is plain that clause *(c)* of § 133 speaks prospectively.  Before that section can come into play at all a prisoner must be "held under a sentence containing a minimum sentence for a crime committed while on parole."  Once it does come into play, no parole permit may be issued until the prisoner "*shall* have served two-thirds of such minimum sentence" (emphasis supplied).  To sanction a procedure which allows partial or complete satisfaction of the ineligibility period by time served prior to the commission of the parole crime — time which, by the terms of § 149, may in fact have been served while on parole release — would be simply to ignore the statutory language.

Equally significant to our analysis is the fact that clause *(c)* makes specific provision for the aggregation, for purposes of computing parole eligibility, of multiple consecutive sentences imposed for crimes committed while on parole.  The provision for calculating parole eligibility as to a single parole crime and the provision for calculating parole eligibility for multiple parole crimes were enacted together.  See St. 1965, c. 764, § 1.  We think it clear from a comparison of these two provisions that, had the Legislature intended to permit the aggregation of sentences proposed by Durham, it would have done so expressly, not by silence.  Cf. *Brady* v. *Brady*, 380 Mass. 480, 483 (1980). 2A C. Sands, Sutherland Statutory Construction § 47.23, at 123 (4th ed. 1973).

Finally, our conclusion as to the intent of clause *(c)* is buttressed by a review of the legislative history of § 133.  Prior

to 1965, § 133 contained no special provision pertaining to the parole eligibility of persons convicted of crimes committed while on parole release. By c. 162 of the Resolves of 1963, the Legislature empanelled a Special Commission on Firearms, Paroles, and Related Matters. Among its several tasks, the commission was to undertake an investigation and study of "the laws of the commonwealth relative to the release of prisoners on parole, and of the procedures employed in carrying out the provisions of such laws, to determine whether proper safeguards are observed for the protection of the public." On June 29, 1965, the commission presented to the Legislature its third report, dealing with the subject of paroles. 1965 Senate Doc. No. 1151. The commission prefaced its report with the observation that the Legislature had acted in part "as a result of the murders of several police officers by parolees or former parolees and the increase in crimes of violence by gangland figures throughout Metropolitan Boston. This has caused a loss of confidence in the parole system by the people of the commonwealth and your Commission feels that stringent measures must be used and that this condition must be speedily corrected." *Id.* at 1. The commission noted among the purposes of its recommendations "providing the public with greater protection, thus restoring the confidence of the community in our parole system." *Id.* at 2. With respect to parole eligibility after conviction of a crime committed while on parole, the recommendation was unequivocal: "We . . . recommend that men sentenced to the State Prison for a crime committed while on parole shall not be eligible for parole until they have served two-thirds of their minimum sentence but in any event not less than two years." *Id.* at 3.

The language chosen by the commission to effect this change was less than a model of clarity.[6] Significantly,

---

[6] As originally drafted by the commission, clause (*c*) of § 133 read as follows: "(*c*) further provided that no prisoner held under a sentence containing a minimum sentence for a crime committed while on parole shall receive a parole permit until he shall have served two thirds of such minimum sentence, or more sentences to be served otherwise than con-

however, the first provision of the recommended clause (c) survived the legislative process intact, and it is that provision which applies to Durham's case. We thus find in the legislative history a clear indication that clause (c) of § 133 was meant to ensure an absolute minimum period of parole ineligibility following the conviction of a crime committed while on parole.

As we have demonstrated, the third clause of § 133 is neither ambiguous nor silent as to the theory of aggregation advanced by Durham. Accordingly, we need not resort to the principle of strict construction of penal statutes expressed in *Beloin* v. *Bullett*, 310 Mass. 206, 211 (1941). Nor is there anything in *Henschel* v. *Commissioner of Correction*, 368 Mass. 130 (1975), that is inconsistent with the instant decision. There, our study of the legislative history of G. L. c. 127, § 128, revealed that the Legislature, in extending the jurisdiction of the parole board to include certain county house of correction prisoners, had simply omitted a corresponding provision for the aggregation of State prison and house of correction sentences in computing parole eligibility. Nothing in the relevant statutes or their history indicated an intent to preclude such aggregation. See *Henschel* v. *Commissioner of Correction, supra* at 134-137. *Henschel* is thus wholly distinguishable from the instant case.[7]

---

currently for offenses committed while on parole, two thirds of the aggregate of the minimum terms of such several sentences, but in any event not less than two years for each such sentence, with time off for blood donations as provided heretofore in Section 129A." 1965 Senate Doc. No. 1151, App. G., at 1-2. As enacted by St. 1965, c. 764, § 1, the final version of § 133 (c) eliminated the words "further provided" which opened the clause, but left the commission's draft otherwise unchanged up to the comma following "sentence." The major reworking of the commission's draft was focused on the second part of clause (c), dealing with multiple consecutive sentences for crimes committed while on parole.

[7] We express no view as to the ultimate validity of the procedure, currently employed by the parole board, of considering a prisoner's parole crime sentence and the period of parole ineligibility arising from that sentence, to begin only when a prisoner has completed an earlier sentence, by parole or otherwise. The parties have addressed only the propriety of

*Durham v. Massachusetts Parole Board.*

In sum, we hold that, for the purpose of determining parole eligibility as to a parole crime sentence, clause (*c*) of G. L. c. 127, § 133, does not permit a sentence imposed for crimes committed while on parole to be aggregated with a prisoner's pre-parole sentence. We therefore vacate the judgment below and remand for the entry of a judgment in accordance with the terms of this opinion.

*So ordered.*

---

aggregating pre-parole and parole crime sentences, and our holding is confined to that issue. To go further on this record would be to risk a declaration "either too narrow or too broad." See *Hadley* v. *Amherst*, 372 Mass. 46, 52-53 (1977), and cases cited.