·ROBERT HUTTON vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, NORFOLK & others.[1]

No. 96-P-1503.

Middlesex. April 8, 1998. - August 13, 1998.

Present: KASS, SMITH, & JACOBS, JJ.

*Practice, Criminal,* Sentence, Parole. *Parole. Imprisonment,* Parole. *Civil
Rights,* Immunity of public official. *Governmental Immunity. Public Officer.*

Where, in 1988, the Department of Correction and the parole board did not
act unreasonably in interpreting applicable statutes to calculate the parole
date of a State prisoner, following which a judge of the Superior Court,
acting on the prisoner's petition for a writ of habeas corpus, determined
that the department and board had miscalculated the release date, the
prisoner's right to have been released was not so clearly established at the
time as to preclude the government officials from successfully asserting
immunity from the prisoner's action to recover damages for three and one-
half months of excess imprisonment. [307-308]

CIVIL ACTION commenced in the Superior Court Department on
April 24, 1991..

The case was heard by *James F. McHugh, III*, J., on motions
for summary judgment.

*Craig A. Cellitti* for the plaintiff.

*William J. Meade*, Assistant Attorney General, for the
defendants.

KASS, J. Acting on Robert Hutton's petition for a writ of
habeas corpus, a judge of the Superior Court determined that
officials of the Department of Correction (department) and the
parole board (board) had miscalculated his release date and
ordered Hutton to be discharged from confinement. That calcula-

---

[1]The superintendent at the times material is Norman Butler. The other
named defendants are John Curran, then the chair of the parole board;
Christine Hillman, the records keeper of Massachusetts Correctional Institu-
tion, Norfolk; and Tina Hurley, the records keeper of the parole board.

tion required the application of G. L. c. 127, §§ 129[2] and 133, G. L. c. 279, § 8A, and a joint policy statement (No. 77-11) of the department and the board. Hutton was released and brought an action under 42 U.S.C. § 1983 (1982), G. L. c. 258, and the common law (false imprisonment) to recover damages for approximately three and one-half months of excess imprisonment. A second judge of the Superior Court allowed the defendants' motion for summary judgment. In a cogent memorandum of decision, the judge held that the application of the statutory scheme by department and board officials had been an objectively reasonable one — albeit ultimately mistaken — and that they enjoyed a qualified immunity from liability to Hutton for causing him extra days in prison. We affirm.

1. *Facts*. There is no dispute about the material facts. On August 2, 1979, Hutton received a sentence of from eight to ten years in State prison. On December 11, 1979, he received three concurrent four- to five-year sentences to be served from and after the first sentence.[3] The department, in accordance with G. L. c. 127, § 133, and *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 134-137 (1975), aggregated the sentences, which all involved a "one-third parole eligibility date," to produce a composite sentence of from twelve to fifteen years, and a parole eligibility date of four years.

On April 26, 1983, Hutton was released on parole.[4] Not quite five years later, on February 5, 1988, Hutton was convicted of new criminal charges, and his parole was revoked. He had been returned to confinement the preceding month, on January 7, 1988.

2. *Differences as to how discharge date was to be calculated*. As calculated by the State, Hutton's discharge date would be January 13, 1990. What the department had done, based on its interpretation of G. L. c. 127, §§ 129, 133, and 149, and G. L. c. 279, § 8A, was to add up the unserved time in Hutton's sentences and to credit him one day for each day successfully on parole. Hutton said the statutory scheme required that the

[2]Section 129 of c. 127 was repealed by St. 1993, c. 432, § 10. It was applicable during the times material to this case.

[3]Plaintiff received further sentences on July 22, 1980, of three to five years for unlawful carrying of a firearm and assault with a dangerous weapon. Through unrelated procedures those sentences were commuted to terms in a house of correction; they play no role in this appeal.

[4]He had received credit for time served while awaiting trial.

two sets of sentences be broken apart while he was on parole and that he receive day-for-day credit against each set. Calculated that way, Hutton's eight- to ten-year sentence (on which the one-third would be two years and eight months) wrapped up while he was on parole and his from and after four- to five-year sentence wrapped up on April 25, 1988.[5] That was the method the department actually used when from and after sentences were served at a different penal institution within the Commonwealth. See Department of Correction and Parole Board Joint Policy Statement 77-11.

By the time the defendants' motions for summary judgment in Hutton's subsequent damages case were brought forward, we had decided *Crooker* v. *Chairman of the Massachusetts Parole Bd.*, 38 Mass. App. Ct. 915 (1995). In that case the prisoner also was subject to an A sentence and a from and after set of concurrent B sentences. We concluded that "because [the prisoner] began to serve his B sentences when he was released on parole, he should receive day-for-day credit against both his sentences during the time he spent on parole." 38 Mass. App. Ct. at 916. The decisive statute, the *Crooker* opinion said, was G. L. c. 279, § 8A, as added by St. 1924, c. 165, which provides:

> "For the purpose only of determining the time of taking effect of a sentence which is ordered to take effect from and after the expiration of a previous sentence, such previous sentence shall be deemed to have expired when a prisoner serving such previous sentence shall have been released therefrom by parole or otherwise. Nothing in this section shall be construed to alter or control any provision of [§ 131 or § 149 of c. 127]."

Although that text leaves no doubt that "a from and after sentence 'takes effect' when a prisoner is released from an earlier sentence by parole," *Crooker* v. *Chairman of the Massachusetts Parole Bd.*, *supra* at 916, it is not self evident that it

---

[5]The time between April 25, 1988, and January 13, 1990, is obviously a great deal more than three and one-half months. Hutton's calculation had not been right either. As recalculated by the proper method, his release date was toward the end of April, 1989 (the record does not tell the precise date). The judgment granting the writ of habeas corpus is dated August 16, 1989. Hutton was released August 18, 1989. There is no dispute that the excess confinement was approximately three and one-half months.

supersedes, particularly in view of the second sentence of the statute, the aggregating procedure prescribed by *Henschel* v. *Commissioner of Correction,* 368 Mass. at 134-137. Language that appears in *Pina* v. *Superintendent, M.C.I., Walpole,* 376 Mass. 659, 668-669 (1978), and *Burno* v. *Commissioner of Correction,* 399 Mass. 111, 114 (1987), might also have helped steer the government officials to their view. At the very least, officials of the department or the board could well have arrived at their reading of the statutes without either obstinately ignoring a statutory mandate, negligently overlooking it, or obtusely failing to recognize it. Before *Crooker,* there was an arguable question of statutory interpretation.

3. *Liability of the department and the board.* An action for damages may be the most realistic and effective redress against lawless and abusive governmental action. *Harlow* v. *Fitzgerald,* 457 U.S. 800, 814 (1982). Reciprocally, public officials need to be guarded against baseless but, because of its cost, ruinous litigation lest those officials flinch in the discharge of their duties or shrink from taking them on at all. *Ibid.* The resolution of those competing interests has been that government officials are protected by a qualified immunity, i.e., they are immune from an action for civil damages unless the right the official has violated is a "clearly established statutory or constitutional right[] of which a reasonable person would have known." *Id.* at 818. *Anderson* v. *Creighton,* 483 U.S. 635, 640 (1987). The clearly established right is not one discernible at a high level of abstraction, for example the right to equal protection of the laws, but must be a particularized right. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, (citations omitted) but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson* v. *Creighton, supra.* See *Duarte* v. *Healy,* 405 Mass. 43, 46-47 (1989); *Martino* v. *Hogan,* 37 Mass. App. Ct. 710, 718-719 (1994). Compare *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield,* 401 Mass. 26, 33 (1987), cert. denied, 485 U.S. 906 (1988) (ministerial act); *Dobos* v. *Driscoll,* 404 Mass. 634, 646-650, cert. denied sub nom. *Kehoe* v. *Dobos,* 493 U.S. 850 (1989) (law very clearly established).

Statutory interpretation, particularly of parallel statutes, can be notoriously difficult. When interpretation is reasonably required, the right to be found in a set of statutes does not qualify as one that is reasonably established. As the motion judge observed, it was not irrational, before *Crooker,* for the department and the board to hold the position that upon a prisoner's return to custody from parole, discharge date calculations would proceed as if the prisoner had been incarcerated all the time. Hutton's rights were not clearly established, and the defendants, therefore, enjoy immunity from suit under the § 1983 claim and under the common law false imprisonment claim.[6]

The defendants' motions for summary judgment were correctly allowed and the judgment is affirmed.

*So ordered.*

---

[6]Hutton has not appealed from the denial of his claim under G. L. c. 258.