SIMONE COSTA *vs.* COMMISSIONER OF CORRECTION.

No. 00-P-313.

Barnstable. February 12, 2002. - September 20, 2002.

Present: BECK, GILLERMAN, & KAFKER, JJ.

*Practice, Criminal,* Sentence.

Discussion of relevant case law concerning whether sentences for crimes com-
    mitted by a prisoner while on escape should be served concurrently with
    sentences the prisoner was serving at the time of the escape. [45-48]
A prisoner who escaped from the custody of the Department of Correction
    while serving a sentence, committed new crimes while on escape, and was
    required to serve a sentence for the new crimes as well as complete his
    original sentence, was deemed to have served the sentences concurrently
    where, although there was no genuine issue as to whether the prisoner was
    in actual or constructive custody on the original sentence when the
    subsequent sentence was imposed [48-49], fairness required that the
    sentences run together in this case [49-51].

CIVIL ACTION commenced in the Superior Court Department on
September 13, 1989.

The case was heard by *Richard F. Connon,* J., on a motion
for summary judgment.

*Peter J. Perroni* for the plaintiff.

*David Slade* for the defendant.

BECK, J. The plaintiff-prisoner, Simone Costa, claims that he
should be released from the custody of the Department of Cor-
rection (DOC) because he has finished serving his sentences.
There are two sets of sentences at issue: those the prisoner was
serving at the time he escaped from the Concord reformatory
and those subsequently imposed for crimes committed while he
was on escape. A Superior Court judge rejected the prisoner's
assertion that the sentences for the crimes he committed while
on escape should be deemed to have been served concurrently
with the sentences he was serving at the time of his escape.

*Facts.* In October, 1977, Costa was sentenced to five concurrent terms at the State reformatory at Concord (Concord) for armed robbery. See generally *Commonwealth* v. *Thurston*, 53 Mass. App. Ct. 548, 554-555 (2002), describing Concord sentences. Costa escaped from the Concord farm dormitory on September 2, 1979, when he failed to return from a furlough. Approximately six weeks later, on October 14, he was arrested on new charges and held at the Barnstable house of correction. Shortly thereafter, he was indicted for the offenses he committed while on escape. He was transferred to MCI-Walpole (Walpole) (now called Cedar Junction) on December 6, 1979. The escape warrant traveled with him to Walpole.

On January 15, 1980, the DOC issued, and Costa received, a notice of disciplinary hearing from Concord indicating that the hearing on the escape from Concord would be held the next week at Walpole. At the hearing, Costa pleaded guilty to a violation of prison rules; he served a sanction of ten days in isolation at Walpole.

Two and one-half months later, on April 10, 1980, Costa was sentenced to twenty to forty years at Walpole for the crimes he committed while on escape — possession of a sawed-off shotgun, attempted breaking of a safe, and armed robbery. There is nothing in the record indicating whether the sentencing judge intended those sentences to run consecutively or concurrently with the Concord sentences. (According to a footnote in the motion judge's memorandum of decision, the file on the 1979 offenses is missing from the Barnstable County clerk's office.) Six months after his plea to the new crimes, Costa pleaded guilty to escape, presumably on an indictment. See G. L. c. 268, § 16; *Commonwealth* v. *Clark*, 20 Mass. App. Ct. 962, 964 (1985). That conviction was placed on file.

On September 15, 1995, Costa was paroled from the Walpole sentence. Among the conditions set out in the certificate of parole was the notation, "Paroled to Balance of Concord Sentence Only." Costa was transferred to Concord where he continues to serve the balance of his original Concord sentence.

*Proceedings below.* Costa filed the complaint at issue here in September, 1989, nine years after he began serving the Walpole sentences for the crimes committed while on escape. According

to the Superior Court judge's memorandum of decision, the complaint (which is not included in the record before us), sought a declaratory judgment, see *Royce, petitioner*, 28 Mass. App. Ct. 397, 399 (1990), that the remainder of Costa's original Concord sentence had run concurrently with the subsequent Walpole sentence. After a lack of action on entries that appeared occasionally on the Barnstable Superior Court docket over a ten year period, a Superior Court judge held a hearing in July, 1999, on the motion of the defendant Commissioner of Correction (commissioner) to dismiss or for summary judgment. Treating the commissioner's motion as one for summary judgment, the judge allowed it. He ruled that Costa was not serving the Concord sentence at the time he was sentenced on the new crimes, because the escape suspended the running of the Concord sentence, citing *Kinney, petitioner*, 5 Mass. App. Ct. 457, 459 (1977). Therefore, concluded the judge, the presumption that when multiple sentences are imposed, they run concurrently with all other sentences imposed at the same time or those already being served, see *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 133 (1975), did not apply to Costa.

*Issues on appeal*. Costa claims the judge's decision is wrong. He asserts that "[t]here is at least a genuine issue of fact as to whether [he] was [in] actual or constructive custody of his Concord sentence," citing *Kinney, petitioner, supra* at 460. However, there is nothing in the record suggesting there is or was a factual dispute. Indeed, the judge explicitly stated in his memorandum of decision that there was not. Moreover, Costa filed a cross motion for summary judgment, which we assume alleged that there was "no genuine issue as to any material fact," as Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), requires. Having not claimed below that there was a factual issue in this case, Costa has waived that argument. See *Commonwealth* v. *Clark*, 20 Mass. App. Ct. at 963. We therefore address the legal significance of the agreed-upon facts. Simply stated, Costa claims the evidence shows that he was in custody on the Concord sentence at the time he was sentenced for the crimes committed while on escape, or, alternatively, that fairness requires that the sentences run together. The commissioner argues that Costa was not in custody on the Concord sentence

when the subsequent sentence was imposed, and that relief on fairness grounds is not warranted.

*Relevant case law.* The commissioner relies on *Kinney, petitioner,* 5 Mass. App. Ct. at 459-460, as the "closest case on point." In that case, the prisoner escaped from the Plymouth forestry camp while serving a Walpole sentence. He was arrested and convicted for new crimes committed while on escape, and was sentenced to new periods of incarceration to be served concurrently with each other at a house of correction. He claimed that the later sentences should run concurrently with the original sentences as well, pursuant to G. L. c. 279, § 8 (authorizing concurrent sentences and establishing order of service). We rejected Kinney's reasoning and his reliance on the rule of *Henschel* v. *Commissioner of Correction, supra.* Citing *Zerbst* v. *Kidwell,* 304 U.S. 359, 361 (1938), and *Harding* v. *State Bd. of Parole,* 307 Mass. 217, 220 (1940), we held that "the prisoner was not 'serving' one sentence at the time he was sentenced for other crimes [because] his escape had suspended the running of the original sentence until such time as he should be returned to Walpole." *Kinney, petitioner, supra.*

*Zerbst* and *Harding* involved new offenses the prisoner committed while on parole, but *Zerbst* described the rights and status of the prisoner in that case as "analogous to those of an escaped convict." *Zerbst* v. *Kidwell,* 304 U.S. at 361, quoting from *Anderson* v. *Corall,* 263 U.S. 193, 196 (1923). The Supreme Court held that the prisoner "was no longer in either actual or constructive custody under his first sentence." *Zerbst* v. *Kidwell, supra.* Therefore, time served under the second sentence could not be credited to the first sentence. *Ibid.* In *Harding,* the Supreme Judicial Court, citing *Zerbst* and also engaging in a statutory analysis of the versions of G. L. c. 127, § 149, and G. L. c. 279, § 8A, then applicable, concluded that "it would seem a fair inference . . . that the Legislature intended that service of the unexpired sentence of one on parole when sentenced for another crime was not to begin to run until the expiration of the term of the second sentence." *Harding* v. *State Bd. of Parole,* 307 Mass. at 220.

About a year after we decided *Kinney,* the Supreme Judicial Court decided *Chalifoux* v. *Commissioner of Correction,* 375

Mass. 424 (1978). *Chalifoux* is also an escape case. The issue there was whether the prisoner, who had escaped from a Massachusetts prison to California and was convicted of new crimes there, was entitled to credit on his Massachusetts sentence for the time he served in California. The court observed that "[i]n cases involving the issue whether credit should be given for time served on multiple sentences imposed within the Commonwealth, where no statute [is] controlling, [the court had] been guided by considerations of fairness and a proper sense of justice." *Id.* at 427, citing cases. *Chalifoux* did not mention *Kinney.*

The facts of *Chalifoux* were as follows. When the prisoner, while incarcerated in California, learned that Massachusetts had lodged a detainer against him, he demanded a speedy trial on the escape charge and also requested release to the DOC to ensure that he could serve his Massachusetts and California sentences concurrently (as the California sentence had provided). *Id.* at 425. The DOC notified Chalifoux that they would not transfer him because the Massachusetts prisons were overcrowded. *Id.* at 426. The DOC also notified the California authorities that it did not agree that the sentences should be served concurrently, although the latter information apparently did not reach Chalifoux.

The Supreme Judicial Court noted that refusal to transfer solely on grounds of overcrowding "might fairly imply that Massachusetts was crediting Chalifoux for the time he was serving in California." *Id.* at 428-429. The court concluded that "it [was] unfair for Massachusetts to refuse to receive a prisoner on transfer and then to decline to credit him with time served elsewhere on a sentence intended to be concurrent with his Massachusetts sentence without advising him promptly of that determination." *Id.* at 429. "A decision not to accept Chalifoux because of overcrowded conditions in Massachusetts prisons, coupled with an outstanding Massachusetts detainer lodged against [him], suggest[ed] that Chalifoux could be regarded as in the constructive custody of Massachusetts authorities and thus serving his Massachusetts sentence in California." *Ibid.*

Twelve years after the *Chalifoux* decision, and six months after Costa filed the complaint at issue here, we decided *Royce,*

*petitioner*, 28 Mass. App. Ct. 397 (1990). Royce had also escaped while serving concurrent sentences at Concord and committed new crimes while on escape, including a Federal crime that was prosecuted in New Hampshire. *Id.* at 398. A detainer requiring Royce to serve the balance of the original State sentence from which he had escaped was lodged against Royce six years after his release on parole from the Federal sentence, and while he was serving time on new State prison sentences aggregating twenty-four to thirty-five years. *Id.* at 398-399. In analyzing Royce's claim that he was entitled to credit towards service of his original sentence, we followed the "considerations of fairness and a proper sense of justice" standard set out in *Chalifoux. Royce, petitioner, supra* at 397.

In *Royce,* we recognized the principle set out in *Kinney,* that the prisoner's escape had interrupted service of his original prison sentence. *Royce, petitioner, supra* at 400. However, we observed that the department could have taken custody of the prisoner a number of times during the period when the most recent offenses were pending in Massachusetts courts. *Id.* at 401. We concluded that fairness required that

> "at least from the time Royce was returned to the custody of the [DOC] under the new State prison sentences, none of which was expressly imposed to be served from and after the unexpired portion of the [original] State prison sentence, he be deemed to have been in custody on the sentence from which he escaped. Although, as an escapee, Royce's rights may have been limited, we think he had the right, at a minimum, to expect some reasonable degree of promptness in informing him of the Commonwealth's intention regarding service of the [original] sentence. See *Chalifoux* v. *Commissioner of Correction,* 375 Mass. at 429. Failure to require that the Commonwealth act with reasonable promptness in such circumstances would serve to defeat the worthwhile goal of providing prison inmates and prison authorities with some level of certainty as to the likely period of confinement, and it would create the potential for arbitrariness and caprice."

*Ibid.* We concluded that the delay had prejudiced Royce because it "deprived him of the opportunity to have the sentencing

judges order the new sentences to be concurrent with the remaining portion of the [original] sentence." *Ibid.*

In *Royce*, the commissioner argued that "to credit Royce for time served on the sentence from which he escaped would be to reward him for his escape." *Ibid.* We pointed out, however, that "Royce avoided punishment for the crime of escape because the Commonwealth declined to prosecute him. The Commonwealth also had the opportunity, which it missed, to request that the new State prison sentences be served from and after service of the unexpired portion of the [original] State prison sentence." *Id.* at 402.

*Analysis.* 1. *Actual or constructive custody.* Costa argues first that at least beginning when the DOC transferred him from the Barnstable house of correction to MCI-Walpole, he "must be deemed to [have been] serving [his] original sentence" because he was in a State prison, "albeit at a different facility." He cites *Royce, petitioner*, 28 Mass. App. Ct. at 402 & n.3, in support of this argument. The judge rejected this argument on the ground that Concord and Walpole are different institutions. However, we do not endorse attempts to decide these cases or distinguish *Royce* from *Kinney* on the basis of institutional setting. There is nothing in either *Zerbst* or *Harding* on which we relied in *Kinney, petitioner*, 5 Mass. App. Ct. at 460, to suggest that the nature of the institution played any role in those cases. Otherwise, for example, a prisoner whose original sentence was to Concord, who was later sentenced to a jail facility for a crime committed while on escape, would be required to serve the sentences consecutively, while one who was sentenced twice to Walpole, a maximum security facility, would serve his sentences concurrently. Costa has not shown that he was in custody on the Concord sentence simply on the basis of the institution in which he was incarcerated.

Costa next claims that he was in constructive custody of Concord at the time he was sentenced for the crimes he committed while on escape. He cites the following factors (at least one of which, service of the good time sanction, the department disputes) in support of his argument: (1) the January, 1980, disciplinary hearing on the Concord disciplinary report; (2) the use of his Concord inmate number on the documents related to

the disciplinary hearing; (3) the "denotation" of Concord as the applicable institution on the notice of disciplinary hearing; (4) service, following the disciplinary hearing, of the sanction of ten days isolation for the escape; (5) removal of thirty days of accumulated good time as further sanction for the escape; (6) the DOC's continued use of Costa's Concord identification number while at Walpole until imposition of the subsequent sentence; and (7) reference to the Concord sentence as the "governing offense" on a DOC document dated six days before the sentencing for the subsequent crimes.

There is very little law on the issue of constructive custody. The concept first appeared in the statute providing for furloughs. See *Commonwealth* v. *Hughes*, 364 Mass. 426, 428-429 (1973). The statute included language making clear that a prisoner on furlough was nevertheless in the custody of the DOC. Since then, the concept has not often appeared in the case law, and those cases in which the issue has been raised do not suggest that the doctrine should apply here. See, e.g., *Commonwealth* v. *Grant*, 366 Mass. 272, 275-276 (1974) (credit given for time held in lieu of bail, on theory of constructive custody, where prisoner held on a Federal charge while awaiting trial on State and Federal charges that arose out of same incident); *Chalifoux* v. *Commissioner of Correction*, 375 Mass. at 429 (constructive custody suggested where Massachusetts refused to accept prisoner from California because of overcrowded conditions; but case decided on fairness grounds); *Kinney, petitioner*, 5 Mass. App. Ct. at 460 (distinguishing *Commonwealth* v. *Grant*, *supra*, as case involving jail time credit statute and involving related crimes; no constructive custody where crimes not related); *Royce, petitioner*, 28 Mass. App. Ct. at 400-401 (judge below incorrectly believed Federal and State charges arose out of same occurrence, but prisoner entitled to relief on fairness grounds). On the few occasions in which the concept has been an issue, there were sentences for related crimes, which is not the case here, or the case was decided on fairness grounds. We turn then, to the issue of fairness.

2. *Fairness considerations.* Costa claims that fairness compels a decision in his favor. See *Chalifoux* v. *Commissioner of Correction*, 375 Mass. at 427. In developing this argument, Costa

stresses many of the same factors set out in his constructive custody argument and relies to some extent on *Royce, petitioner, supra.* The commissioner, on the other hand, distinguishes *Royce*; asserts that fairness also applies to the public; and claims that the considerations that led to giving credit to Royce do not apply here.

The fairness question is a close one. On one hand, the facts of this case fit squarely within the principles governing *Kinney.* Costa escaped while serving a sentence, committed new crimes while on escape, and was required to serve a sentence for the new crimes as well as complete his original sentence. *Kinney* clearly stated that one on escape is no longer serving a sentence and therefore the rule of *Henschel* v. *Commissioner of Correction*, 368 Mass. 130 (1975) — that unless otherwise specified, new sentences are presumed to run concurrently with sentences currently being served — did not apply to Kinney or similarly situated prisoners.

On the other hand, *Chalifoux* established that "fairness and a proper sense of justice" govern review of these cases. *Chalifoux* v. *Commissioner of Correction*, 375 Mass. at 427. Under that standard, just as the *Chalifoux* court could have considered the Commonwealth's refusal to accept his transfer because of overcrowding to "fairly imply that Massachusetts was crediting Chalifoux for the time he was serving in California," *id.* at 428-429, Costa reasonably could have thought that he had in effect been returned to his Concord sentence. The disciplinary hearing notice came from Concord and used his Concord identification number, and the service of at least part of the sanction imposed at that hearing for the rule violation at Concord was imposed promptly, albeit at Walpole. (Upon his subsequent pleas and sentencing on the crimes committed while on escape, he was assigned a Walpole identification number.)

As the commissioner points out, *Royce* is distinguishable on its facts. There, the delay in filing the detainer was misleading. Having been released from Federal custody with no request for his return to State custody, Royce could well have believed that he was deemed to have served the original sentence. However, the language in *Royce*, with its emphasis on fairness and the teachings of *Chalifoux*, extends well beyond the facts of *Royce*.

.

(Here, there is nothing of assistance in either brief or in the record appendix on the subject of a detainer.)

*Conclusion.* The concerns expressed more than sixty years ago in *Zerbst* v. *Kidwell*, 304 U.S. at 361, that credit for time served under these circumstances "do[es] violence to the plain intent and purpose of the statutes providing for a parole system," continue to have merit, and apply as well to escapes. However, as we pointed out in *Royce*, the burden on the commissioner to prosecute prisoners who escape for that offense or to request that postescape sentences be served from and after any original sentences (or the reverse), is not great. The DOC also has authority to promulgate relevant regulations. See 103 Code Mass. Regs. § 410.10 (1993). We therefore conclude that fairness concerns favor the prisoner in this case. "[H]e had the right . . . to expect some reasonable degree of promptness in informing him of the Commonwealth's intention regarding service of the [original] sentence." *Royce, petitioner,* 28 Mass. App. Ct. at 401. We note that should the Legislature determine that the result here is inconsistent with the policy set out in G. L. c. 127, § 149, governing parole violations, it can enact such legislation as it deems appropriate.

The judgment is therefore reversed. A new judgment shall enter declaring that Costa has completed the original Concord sentence and is remitted to any parole conditions that are warranted.

*So ordered.*